# Ward *v.* Lane.

## Ejectment.

(Decided November 7, 1914. 66 South. 499.)

1. *Appeal and Error; Harmless Error; Evidence.*—Where a complaining party at a later stage of the trial obtained from the witnesses the evidence he desired to extract by questions, objections to which had previously been sustained, no prejudice resulted therefrom.

2. *Same; Review; Evidence.*—Where a witness had testified that before a surveyor reached plaintiff's land, he was surveying for plaintiff's son-in-law, and that plaintiff had the surveyor as part of the survey made for the son-in-law, run out the line involved in

[Ward v. Lane.]

the pending controversy, plaintiff was not prejudiced by other evidence that when he surveyed the line, the surveyor was making a survey at the instance of three people.

3. *Same; Estoppel to Allege.*—Where plaintiff first offered evidence as to the existence of a settlement road, he could not complain of defendant's evidence that such settlement road was located south of a public road which plaintiff's evidence tended to show was the true boundary line.

4. *Evidence; Opinion; Expert.*—Where a surveyor testifying as an expert stated that he had made his survey with the aid of the government field notes, he was properly permitted to state on cross-examination that in making the survey he did not go the distance from the northwest corner south as indicated or called for by the field notes.

5. *Same; Materiality; Res Gestae.*—Where, to discredit a survey, a plaintiff introduced one of the chain bearers, and proved by him the details of a survey, it became competent for defendant to show all the acts of the surveyor which came within the res gestae of the survey, including evidence that while making such survey the surveyor consulted papers which he had with him.

6. *Same.*—All acts done or words spoken pending the doing of a particular act, and which tend in any way to illustrate or give character to such acts, are receivable in evidence as part of the res gestæ.

7. *Same; Expert Opinion.*—Where a surveyor had qualified as an expert in a boundary line dispute, it was proper to permit him to state that in his opinion, a certain corner was the government corner, and that certain trees were witness trees.

8. *Trial; Reception of Evidence; Motion to Exclude.*—In the absence of a motion to exclude it, the court will not be put in error for permitting a non-responsive answer to stand.

9. *Boundaries; Location; Evidence.*—Where, in order to discredit a surveyor the plaintiff introduced one of the chain bearers who testified that the line made by such surveyor ran through a timbered country, and that none of the trees near or on the line bore any evidence of a government survey, that the surveyor walked down a line that bore government marks, but that his starting point was below that line, it was competent on cross-examination to ask him if at that time, the surveyor had his field notes.

10. *Same.*—In a suit to determine the location of a disputed boundary line, it was not error to permit defendant to testify that if the line was where plaintiff claimed it to be, then plaintiff had forty-nine and seventy-four one hundredth acres in his forty-acre tract, and that defendant had only thirty-one and sixteen one-hundredth acres in his forty-acre tract.

11. *Same.*—Where a defendant of his own knowledge knew where some of the undisputed lines and corners were, and was with the surveyor when he surveyed the line in controversy, the court was not in erorr in permitting defendant to tell what he knew concerning that particular survey.

12. *Same; Verdict.*—Where the controversy was over a disputed boundary line, and a survey of the line had been made by one

[Ward v. Lane.]

Thompson, and a map of that line introduced in evidence, a verdict finding that the true line between the two subdivisions in question was the Thompson line, without more, was not sufficient to support a judgment, and could not be lawfully supplemented by the trial court adding thereto the Thompson map.

APPEAL from Houston Circuit Court.

Heard before Hon. H. A. PEARCE.

Ejectment by J. L. Ward against Isaiah P. Lane. Judgment for defendant and plaintiff appeals. Reversed and remanded.

ESPY & FARMER, for appellant.

WILLIAM L. LEE, for appellee.

DE GRAFFENRIED, J.—This suit grew out of a dispute between two adjoining landowners as to the true boundary line between their lands, and was submitted to the jury under the plea not guilty. The evidence shows that there have been several surveys of the disputed line, and the evidence discloses that there was considerable divergence in some of the surveys. It appears that there was certainly one ancient survey made through the property. The plaintiff contends that *this* survey was made by the federal government—that it is, in fact, *the* government survey—and that the line thus run is therefore the true line. The defendant, on the other hand, claims that *this* survey is not the survey which was made by the federal government; that it was made not exceeding 60 years ago, and that the markings on the trees evidencing the line of this survey are not government marks. There was, on this disputed question, some evidence tending to support both the theory of the plaintiff and that of the defendant.

(1) For the purpose of showing that the predecessors of the plaintiff and of the defendant in title rec-

[Ward v. Lane.]

ognized and accepted the above ancient line as the true line, the plaintiff offered some evidence tending to show that Boggs—one of the predecessors—pointed out this ancient line as the true line, and that a public road was constructed along that line, with the line in the middle of the road, and that the road as thus con-structed separated the land of Boggs, one of the pred-ecessors in title, from those of Brigham, the other pred-ecessor in title. In developing his testimony on this subject the plaintiff propounded questions to certain witnesses, which questions the trial court refused to allow, upon objection by the defendant, the witnesses to answer. These rulings of the court are made the basis of assignments of error from 1 to 18, inclusive. Conceding that the plaintiff, as to this offered testi-mony, brought himself within the operation of the rule declared in *Payne v. Crawford*, 102 Ala. 387, 14 South. 113, and *Long v. Cummings*, 156 Ala. 577, 47 South. 109, we are of the opinion that the record affirmatively shows that the plaintiff obtained, from each witness to whom the propounded the questions made the basis of assignments of error from 1 to 18 inclusive, the bene-fit of the evidence which he desired to extract from such witness by the questions to which objections were sustained. Each of these witnesses, before he left the stand, testified to the specific fact which, by the ques-tions above referred to, the plaintiff undertook to draw from him and place before the jury for their considera-tion.

Sustaining objections to questions is error without injury it it appear that the party complaining had the benefit of all evidence that could have been thereby elicited.—*Thomas v. State*, 144 Ala. 125, 46 South. 771 ; *Pate v. State*, 158 Ala. 1, 48 South. 388.

The above rule may, at times, place the complaining party to some disadvantage, especially when the rulings of the trial judge may possibly indicate to the jury that he regards the evidence as inadmissable, but it is one which has been adopted by appellate courts as the rule which best subserves the administration of justice through the courts.

(2) It appears that a witness, Crawford, who qualified as an expert, made a survey of this line. While he was testifying as a witness for the plaintiff it was developed that this survey was made by him with the aid of the government field notes. The witness so testified without objection. As testing the accuracy of the survey, this witness, against the objection of the plaintiff, was permitted to testify, on cross-examination, that he did not go, in making the survey, the distance from "the northwest corner here (indicating a point on the diagram) south as indicated, or as called for by the field notes." This testimony of the witness referred to a fact within his personal knowledge. The field notes may or may not have been accurate, but if they showed certain evidences of the government survey, which were a mile apart, and the surveyor did not survey the whole mile, but only a half of it, he knew this fact, and we see no reason why he was not competent to testify to it. This evidence was relevant.

(3) It appears that a survey of this disputed line was also made by one Borland, and that a witness, Danford, was one of the chain bearers. This witness was introduced by the plaintiff for the purpose of discrediting the Borland survey, and he testified that the line which was made by the Borland survey ran through a timbered country, and that none of the trees near or upon that line bore any evidence of a government survey. The witness further testified that Borland

[Ward v. Lane.]

walked down a line which bore government marks, but that his starting point was below that line, and that his survey was below that line. On cross-examination the defendant propounded to the witness the following question: "And he had his field notes with him, did he?" The plaintiff objected to the question upon the ground that it called for irrelevant, illegal, and immaterial testimony, and upon further ground that it called for an opinion or a conclusion of the witness. The trial court overruled the objection and permitted the witness to answer the question, and we think properly so. The witness, if he knew that the surveyor had his field notes with him when he made the survey, might well tell it. The witness, however, in answering the question, stated that "he had some papers with him."

It may be that the answer was not responsive to the question, but if so, the plaintiff did not move the court to exclude the answer of the witness upon *that* ground, and the trial court cannot be put in error for permitting the answer to remain with the jury. The plaintiff can take nothing on account of his eleventh assignment of error.

(4) After the above evidence was brought into the case the trial court permitted this witness, Danford, to testify that while making the survey, the surveyor consulted "the papers which he had with him." In considering the propriety of this testimony it must be remembered that the plaintiff himself put this witness on the stand and first went into a part of the details of the survey. He, himself, let down the gap and made it wide enough for the defendant to bring into the case all those acts of the surveyor which came within the res gestæ of the survey. It may be that the papers were not the field notes, but this matter came up

collaterally on cross-examination, and as a competent surveyor in making would, before making the survey, naturally provide himself with data as an aid to him in making the survey—as copies of the field notes are in all of our probate offices subject to examination by surveyors—we think that, as indicating that the surveyor who made this survey below a line which was marked by witness trees, and which he knew was below such line, did so upon data which he, as a surveyor, was willing to consult and rely upon, this evidence was pertinent and competent. This surveyor was not used as a witness, and we presume that he was either dead or out of the jurisdiction of the court, and in his absence, as the parties saw proper to go into the matter of his survey, and as the plaintiff saw proper to attack the correctness of the survey by showing some of the things which the surveyor did while making the survey, we are of the opinion that the defendant had a right, on cross-examination, to show all of the acts of the surveyor which were connected with the survey and which came within the res gestæ of the survey. This testimony was relevant, on cross-examination, not only for the purpose of testing the accuracy of the recollection of the witness, but also in showing the manner in which the survey was conducted.

The general rule seems to be that all acts done and all words spoken pending the doing of a particular act, which tend, in any way, to illustrate or give character to the act, are receivable in evidence as a part of the res gestæ of the act.—*Terry et al. v. Williams*, 148 Ala. 468, 41 South. 804; *Western Union Tel Co. v. Manker*, 145 Ala. 418, 41 South. 850.

(5) Complaint is made in briefs of counsel for appellant of the action of the trial judge in permitting the defendant to testify that a certain settlement road

is south of the public road which the evidence for the plaintiff tends to show this is the true boundary line. The witnesses for the plaintiff were the first to testify as to the existence of this settlement road. What it has to do with this case we do not know, but as the plaintiff first brought it into the evidence, we cannot see that he can complain of the court's action in permitting the defendant's witnesses to tell of its location.

(6) There is nothing in the contention of appellant that the trial judge committed reversible error in permitting the defendant to testify that if the line is where the plaintiff claims it is, then that the plaintiff has 49 74/100 acres in his 40-acre tract, and the defendant, only 31 16/100 acres in his 40-acre tract. If a man knows how many acres there are in a given tract of land, we see no reason why he may not testify to his knowledge of the fact. This evidence tended to show that the line between the two 40-acre tracts is not where the plaintiff contends that it is. Our sections were laid off into tracts of 640 acres each, and while the acreage in our sections may slightly vary, such variations as above indicated are altogether unusual; and there is nothing in this evidence tending to show that the defendant's land is situated in a section in which any one of its 16 subdivisions could have contained only 31 16/100 acres of land. If such evidence had existed the plaintiff would no doubt have produced it and thus put an end to this dispute.

(7) During the examination of a witness, Crawford, who testified on behalf of the plaintiff, it developed that when he made *his* survey —Crawford was a surveyor—Koonce, who was also a surveyor, made a survey. At a later period it also developed that one Thompson, also an expert surveyor, was present when

Koonce made another survey, or when Koonce participated in a survey. The defendant was with Koonce when he made one survey, and as the fact that Koonce had surveyed the line was developed while the plaintiff was introducing his testimony, we think that the trial court committed no error in permitting the defendant, while on the stand as a witness, to tell what he knew about the Koonce surveys. The defendant seems to have known of his own knowledge where some of the undisputed lines were, and where some of the undisputed corners of the lands were. The testimony in this case took a wide range, and as it appeared from the undisputed evidence that numerous surveys had been made of the property, many of which were divergent, we can see no reason why the defendant was not entitled to tell what he saw the various surveyors do while they were making their surveys. The defendant testified to nothing with reference to any survey which was not connected with it as a part of its res gestæ.

(8) The fact that the court permitted the witness, Graves, to testify that Killebrew, when he surveyed the line, made a survey at the instance of three people, was of no possible injury to appellant. The witness testified, in substance, that before Killebrew reached the plaintiff's land, he was surveying for the plaintiff's son-in-law, and then that: "I think Mr. Ward (the plaintiff) got him to run the section line between Boggs and Brigham, and that Mr. Boggs got him to run out the Boggs 40."

The "line between Boggs and Brigham" and "the Boggs 40" were matters of importance in this case, and as the *plaintiff himself* had Killebrew, as a part of the survey which was made for the son-in-law, to run the line between him and Brigham, the identical line in-

volved in this controversy, the fact that Killebrew was, before he reached the plaintiff's line, surveying for the son-in-law of the plaintiff, could not, if irrelevant, have been of injury to appellant.

(9) We have already said that there were numerous lines run by various surveyors in the effort to settle the dispute which existed between the parties to this suit with reference to the line between their properties. One of these surveys was, as already stated, made by a man by the name of Thompson, who testified in the case. Thompson made a map showing the line which he testified was the true line, and his map, along with maps made by other surveyors, was introduced in evidence.

Thompson qualified as an expert, and as such expert was permitted to state that, in his opinion, a certain "corner" was a "government corner," and that certain trees were "witness trees." A competent surveyor should certainly have a peculiar knowledge as to the original markings which were made by the surveyors for the government, and for that reason his opinion as to whether a particular "corner" or a particular tree which he had personally examined is or is not a "government corner," or a tree designated by the government surveyors as a "witness tree," should not be without weight when such questions become of value in a trial. We also think that it was entirely competent for this expert to explain to the jury how and where he obtained his starting point, and how and where he ran his line. We also think that beyond doubt his map was properly a matter to go before the jury for their consideration. We, therefore, find that the trial court committed no error in its rulings on the evidence which was adduced through the witness, Thompson.

(10) The jury by their verdict found as follows: "We, the jury, find the true line between the N. W. ¼ of N. W. ¼, section 7, and the S. W. ¼ of S. W. ¼, section 6, of township 3, range 26, to be as follows: 'The Thompson Line.'"

The above verdict was insufficient to support a judgment.—*Wade v. Gilmer*, 186 Ala. 524, 64 South. 611. The trial court had no right to supplement the verdict by adding thereto the map, and that part of the judgment can be treated as nonexistent. It can be stricken upon motion of either party at any time, and the judgment rendered by the court is therefore helpless to perform the functions for which it was rendered.—*Wade v. Gilmer, supra*. The appellee is therefore in such a position that he cannot complain of a reversal of the judgment. The former trial has been abortive of practical results, and the judgment of the trial court must, under the rule laid down in *Wade v. Gilmer, supra,* be reversed, and the cause remanded to the trial court in order that another trial may be had.

(12) In the above opinion we have not undertaken to discuss all of the questions presented by the bill of exceptions as to the rulings of the trial court on the admission of evidence. We have undertaken, in the discussion which we have given to such rulings, however, to express our views as to the course which should be pursued on the next trial.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and MAYFIELD, JJ., concur.