97 So.2d 549

SOUTHERN RAILWAY CO. et al.

v.

Troy L. JARVIS.

6 Div. 863.

Supreme Court of Alabama.

Oct. 24, 1957.

Parsons, Wheeler & Rose and Luther Patrick, Birmingham, for appellee.

Cabaniss & Johnston, Leigh M. Clark and Drayton T. Scott, Birmingham, for appellants.

**442**

LIVINGSTON, Chief Justice.

This is a wrongful death action under Tit. 7, § 119, Code of Alabama 1940, by Troy L. Jarvis for the death of his minor son, Billy Jarvis, against Southern Railway Co. and Morrison O. Allen. From a judgment for plaintiff for $16,500, the defendants appeal.

The evidence presented in the case tends to show the following:

The collision involved in this law suit occurred on April 17, 1953, at approximately 5:55 p. m., on Mineral Springs Road, at a public crossing near Republic, Alabama. Harry Lee Sanford was the driver of the automobile, and Billy Jarvis, the plaintiff's minor son, was the only passenger. Jarvis was sitting in the right-hand front seat. The car was proceeding north on the Mineral Springs Road and the train was going west. The train approached the crossing around a curve which was 350 to 400 feet east of the crossing. The Mineral Springs Road going north had a sharp curve in it about 200 feet from the crossing, and was down grade. About 65 to 70 feet from the crossing, a dirt road intersected the Mineral Springs Road. The dirt road was on a bank, and there was evidence tending to show that bushes, underbrush and trees were on this embankment at the time the collision occurred. There is testimony to the effect that there was only one railroad crossing sign, and this sign was east of the crossing about 12 feet from the edge of the pavement. This sign, according to testimony, was about 8½ feet tall and could not be seen by one going north on the Mineral Springs Road until approximately 110 feet from the crossing. Traffic could not be seen on the Mineral Springs Road from the cab of the Diesel until the train was 100 to 125 feet from the crossing, and a person in the cab could only see about 100 feet south up the Mineral Springs Road.

There was a conflict of testimony as to whether or not signals were sounded at the railroad crossing. There were some six witnesses who testified they heard no signals. However, the engineer testified that he did properly signal for the crossing. The evidence is also in conflict as to the speed of the train, the speed estimates varying from 30 to 50 miles per hour. The evidence also tended to show that the front end of the train and automobile collided, but there is conflicting testimony as to who hit who.

Harry Lee Sanford, being in the military service, was not available as a witness, and therefore a showing was made for him. Such showing tended to show that he saw

the train when about 135 to 140 feet from the crossing. The showing further stated that as he applied the brakes the gas pedal was caught under it and caused the car to jump and speed up, and that he did not get the car out of gear until he was about 8 feet from the train. There was also testimony to the effect that there were approximately 81 feet of heavy skid marks left by the car up to the crossing.

Though the record is not entirely clear, we take it that the showing for Harry Lee Sanford was agreed upon, subject to legal objections to be made when the showing was offered stating what the witness would swear if present. The trial court sustained plaintiff's objection to the last sentence contained in the showing and excluded it from the jury.

It is contended by the appellant that the refusal of the trial court to admit the last sentence of the written statement by the driver of the automobile in question is reversible error. The first part of the statement by the witness relates entirely to a recounting of the accident; the last paragraph contains the only testimony in evidence which qualifies said witness as an expert driver, and the last sentence expresses an opinion of the witness as to whether the automobile could have been stopped in time.

The last paragraph states:

"I have driven automobiles for several years and know the ordinary braking distances of automobiles and particular the automobile I was driving. (From the time I first saw the train, the brakes in the automobile would have stopped it before the collision, if the gas pedal had not been bent and had not become stuck.)"

■ This statement is an opinion of the witness, and if admissible at all is admissible as expert testimony. Jones v. Keith, 223 Ala. 36, 134 So. 630. An expert can testify as to what is the most effective way to stop a car. Armour & Co. v. Cartledge, 234 Ala. 644, 176 So. 334.

■■ But only an expert can give expert opinion evidence, and the further question is: Has Harry Lee Sanford been shown to be an expert? Whether or not Sanford was qualified as an expert was within the sound judicial discretion of the trial court. Stewart v. Sloss-Sheffield Steel & Iron Co., 170 Ala. 544, 54 So. 48; Housing Authority of City of Decatur v. Decatur Land Co., 258 Ala. 607, 64 So.2d 594; Alabama Consolidated Coal & Iron Co. v. Heald, 168 Ala. 626, 53 So. 162. The only evidence which appears in the record besides the statement by Harry Lee Sanford relating to the qualification of Sanford as an expert was elicited from Mr. Strickland, witness for the plaintiff, on cross-examination. There was an attempt by the cross examiner to determine when Mr. Strickland had last seen Harry Lee Sanford, and if he had been driving at that time. The testimony is as follows:

"Q. He had been out there a year and a half before this accident? A. Yes, sir. He would come around. He knew some of the boys around there, * * *.

"Q. Do you know whether he had been driving an automobile or not? A. No.

"Q. You don't know he wasn't? A. No sir, he wasn't old enough. * * *

* * * * * *

"Q. What is your idea as to his age? A. Now?

"Q. At the time of the accident? A. Well, I would say he was 19."

■ A reading of the statement by Sanford contained in the showing, and a consideration of the above testimony is not convincing to us that there was a palpable abuse of discretion by the trial court in excluding the portion of the showing which set forth the opinion of Sanford, set out above. Dorsey Trailers, Inc., v. Foreman, 260 Ala. 141, 69 So.2d 459; Lambert v. Jefferson, 251 Ala. 5, 36 So.2d 594; Johnson v. Battles, 255 Ala. 624, 52 So.2d 702.

## Assignments of Error 3 and 22

During the course of the cross-examination of one of plaintiff's witnesses as to the movements of the train at or about the time of the collision, the following occurred:

"Q. Did it pick up speed or cut down speed? A. No, sir.

"Q. Kept right on moving? A. Yes, sir. Since there has been other people hit by the trains—

"Mr. Clark. We object to that

"The Court. Sustained. Didn't anybody ask you about that, and gentlemen, disregard that statement. Don't volunteer anything."

Immediately following this, there was a request for a mistrial. The trial judge refused such request, but offered to go further in instructing the jury to disregard the voluntary statement. This offer counsel for the defendant declined.

Admitting that the answer of the witness was nonresponsive and inadmissible, it does not appear that the motion for a mistrial was improperly refused. Error cannot be predicated on this ruling by the court, for if anything, it was more favorable to the defendant than was warranted.

■■■ The defendant made a general objection to a nonresponsive answer. It would have been proper for the judge to overrule such general objection, for the proper way to object to a nonresponsive answer is by a motion to exclude. Howell v. Howell, 210 Ala. 429, 98 So. 630; Ward v. Lane, 189 Ala. 340, 66 So. 499. However, the court sustained the objection and promptly and emphatically sought to cure the error by instructing the jury to disregard the voluntary answer. Fortson v. Hester, 252 Ala. 143, 39 So.2d 649; Empire Coal Co. v. Goodhue, 200 Ala. 265, 76 So. 31; Alabama Power Co. v. Edwards, 219 Ala. 162, 121 So. 543. We feel that the effect of the voluntary statement upon the jury was rendered harmless by the action of the trial court.

The defendant in Assignment of Error No. 1 set forth the following:

"The trial court erred in sustaining the plaintiff's objection to the question propounded to Officer Fulton in regard to what the driver of the automobile told the officer how the accident happened, to which action of the court the defendant duly and legally reserved exception."

Officer Fulton was being questioned concerning the driver, as follows:

"Q. But did you talk to him? A. I did, yes, sir.

"Q. And he told you he was the driver?

"Mr. Wheeler: Judge, I object to what he told him.

"The Court: I will sustain.

"Mr. Clark: We except.

"Q. And he told you how it happened, didn't he?

"Mr. Wheeler: Judge, we object to what this driver told him.

"The Court: I will sustain.

"Mr. Clark: We except, * * *".

It is the contention of the appellant that although the driver of the automobile was not a party to the instant suit, a statement by him as to how the accident occurred would amount to a declaration against interest, and would therefore be admissible.

■■■ Without passing on the above, we need only state in passing that there was no showing as to what the driver of the automobile said to the policeman; therefore, it is impossible to state with certainty that it would have been a declaration against interest. For aught that appears from the record, the trial court was not in error in respect to the foregoing.

## Assignments of Error 7, 9, 10, 11, 19, 20, 21

It is the contention of the appellant, under Assignments of Error 7, 9, 10, 11, 19, 20 and 21, that they were entitled to the affirmative charge with hypotheses; for that from the evidence presented in the case, it was the actions of Harry Lee Sanford, the driver of the automobile in which the plaintiff's son was riding, which were the proximate cause of the collision between the automobile and the train engine.

The evidence introduced which sheds light on the actions of the driver of the doomed vehicle tends to show that it skidded some 81 feet prior to the collision. There was also a showing introduced into evidence by the appellant's counsel for Harry Lee Sanford, who was not present. The showing indicated that the driver saw the train when he was about 135 or 140 feet from the train crossing. The showing made no mention of whether the brakes on the car became locked, or of the speed of the car, or of the tires skidding at all, but stated:

"* * * I proceeded to put on the brakes, but as I pressed down on the brake pedal, it pushed down on the gas pedal which was bent and under the brake pedal. This caused the auto to jump and speed up. I stepped on the clutch to get the car out of gear and was not able to get it out of gear until the car was about 8 feet from the engine * * *."

Whether the driver of the automobile saw the train in time to stop is a question for the jury to determine from the evidence presented in the case, especially since such evidence tends to raise conflicting inferences.

Hence, it is also for the jury to determine whether it was the negligence of the trainman or the driver of the automobile that proximately caused the collision. Miles v. Hines, 205 Ala. 83, 87 So. 837; Alabama Great Southern R. Co. v. Mound-ville Motor Co., 241 Ala. 633, 4 So.2d 305; Payne v. Roy, 206 Ala. 432, 90 So. 605.

The affirmative charge was properly refused to the defendant.

## Assignments of Error 6 and 22

The appellant in Assignments of Error 6 and 22 asserts that there was improper argument by counsel for appellee and that the overruling of the objection to such argument was reversible error.

The remarks objected to were as follows:

"Mr. Patrick: * * * I was thinking of the beginning of Longfellow's poem, 'The reaper.' I was thinking that in connection, gentlemen, 'There is a Reaper whose name is Death, and with his cycle keen, he cuts the bearded grain in a breath and flowers that grow between.' And here was a 19 year old flower, and as human beings, we have the losses in life, but you go through a bureau drawer, and you will have in it a few Kodak pictures and a book, and a watch he used to wear, little scraps of maybe a particular shirt he was proud of. That is his bureau drawer. He is gone, he is living in a mount under a mountain on a hillside, but you can go and open that drawer and look at the letters he used to write, and the pictures of his friends he used to take, and you can think of how he used to come in and kiss his mother and add joy and delight and brightness to the home.

"The law says you can do one more thing."

"Mr. Clark: I hate to object to that, it is beautiful and wonderful, but it is such an appeal to the sympathy of the jury, I have to ask the court to exclude it.

"The Court: Overrule the objection; go ahead.

"Mr. Clark: We except. Is there any question about what he said?

"The Court: No, I heard it."

This court has set no hard and fast rules determining what argument is proper and improper in the presence of a jury. As was stated in Birmingham Railway, Light & Power Co. v. Gonzalez, 183 Ala. 273, 61 So. 80, 84:

"* * * Each case of this character must be decided upon its own merits. There is no horizontal rule by which these qualities can be ascertained in all cases. Much will depend upon the issues, the parties, and the general atmosphere of the particular case. * * *"

The control of arguments of counsel rests largely in the discretion of the trial court, before whom the argument is made, and who sees and can judge the demeanor of the counsel making the argument, and who can determine whether a prejudicial atmosphere is created by such remarks; therefore, we will not interfere where this discretion is not abused. Birmingham Electric Co. v. Mann, 226 Ala. 379, 147 So. 165; Smith v. Reed, 252 Ala. 107, 39 So.2d 653; Adams v. Queen Insurance Co. of America, 264 Ala. 572, 88 So.2d 331.

As stated in Birmingham Electric Co. v. Cleveland, 216 Ala. 455, 113 So. 403, 407, in regard to whether there should have been a reversal because of error in overruling defendant's motion for a new trial based on improper argument:

"Every question of this sort is to be decided upon consideration of the peculiar facts involved and the atmosphere created in the trial of the cause."

However, as was stated in Beaird v. State, 219 Ala. 46, 121 So. 38, 41:

"The court must control the trial so that adverse sentiments shall not be so prominent as to create prejudice against defendant * * *."

Certainly where the improper argument is prejudicial and is based on facts not in evidence, the erroneous overruling of objection to the argument by the trial court would be cause for reversal. Cross v. State, 68 Ala. 476; Wolffe v. Minnis, 74 Ala. 386. But, not all improper argument is so prejudicial as to require reversal. Birmingham Electric Co. v. Mann, supra; Beaird v. State, supra; Street v. Browning, 210 Ala. 331, 98 So. 203.

It is also established that before there can be a reversal for improper argument the statement must be made as a fact and not as an illustration. Cross v. State, supra; Clinton Mining Co. v. Bradford, 200 Ala. 308, 76 So. 74; Kuykendall v. Edmondson, 208 Ala. 553, 94 So. 546.

The court in the Cross case, supra, stated as follows:

"* * * The statement must be made *as of fact;* the fact stated must be unsupported by any evidence, must be pertinent to the issue, or its natural tendency must be to influence the finding of the jury; or the case is not brought within the influence of this rule. To come within the last clause above, namely, where the natural tendency is to influence the finding of the jury, the case must be clear and strong. We would not embarrass free discussion, or regard the many hasty or exaggerated statements counsel often make in the heat of debate, which can not, and are not expected to become, factors in the formation of the verdict. Such statements are usually valued at their true worth, and have no tendency to mislead. It is only when the statement is of a substantive, outside fact —stated as fact—and which manifestly bears on a material inquiry before the jury, that the court can interfere, and arrest discussion."

Under the test as established in the Cross case, supra, and further considering that

so far as we can observe from the record, the trial was properly conducted in an atmosphere void of prejudice, we do not think that the portion of the argument here appearing on the record is so inflammatory as to require a reversal.

Also, the court below in his oral charge to the jury stated:

"* * * It is your sole responsibility to decide the facts in the case, and after you do that, you apply the law to the case and attempt to reach a verdict without sympathy or prejudice for or against any litigant, * * *."

If the argument was improper, this instruction by the court, in the circumstance of the instant case, would have a curative effect. Alabama Great Southern R. Co. v. Swain, 248 Ala. 535, 28 So.2d 714. There is no basis for reversal because of improper argument.

### Assignment of Error 22

It is insisted by the appellant that the damages awarded, $16,500, are excessive. It was stated in City of Mobile v. Reeves, 249 Ala. 488, 31 So.2d 688, 696, that:

"In cases of this kind all damages are punitive and should be measured by the quality of the wrongful act and the degree of culpability involved. Parke v. Dennard, 218 Ala. 209, 118 So. 396; Karpeles v. City Ice Delivery Co., 198 Ala. 449, 73 So. 642."

In the instant case, it does not appear that under the evidence the amount of damages was excessive or that the jury was actuated by passion, bias, or prejudice. Further, the trial judge refused to grant a new trial where the excessiveness of the verdict was argued. As was stated in Louisville & Nashville Railroad Co. v. Tucker, 262 Ala. 570, 80 So.2d 288, 298:

"This court has laid down the principle that a verdict will not be disturbed as excessive where the trial court has refused to disturb the amount unless so excessive as to indicate passion, prejudice, corruption or mistake. Montgomery City Lines, Inc., v. Davis, 261 Ala. 491, 74 So.2d 923. And we have held that the correctness of a jury's verdict is strengthened when the presiding judge refuses to grant a new trial. Simpson v. Birmingham Electric Co., 261 Ala. 599, 75 So.2d 111; Gulf, Mobile & Ohio R. Co. v. Sims, 260 Ala. 258, 69 So.2d 449. * * *"

And so in this case the verdict will be allowed to stand. The decision is affirmed.

Affirmed.

SIMPSON, GOODWYN and COLEMAN, JJ., concur.