412 So.2d 254 (1982)
DRS. LANE, BRYANT, EUBANKS & DULANEY, a Partnership Composed of Martin L. Lane, Edward L. Bryant, Jr., R. Eubanks, Jr., and Frank M. Dulaney
v.
Margaret B. OTTS, as Administratrix of the Estate of William E. Otts, deceased.
80-518.
Supreme Court of Alabama.
March 26, 1982.
*256 Alton R. Brown, Jr. and James H. Crosby of Brown, Hudgens, Richardson, Whitfield & Gillion, Mobile, for appellants.
Richard Bounds and Robert T. Cunningham, Jr. of Cunningham, Bounds, Byrd, Yance & Crowder, Mobile, for appellee.
BEATTY, Justice.
Plaintiff, Margaret B. Otts, filed this action in Mobile Circuit Court against Drs. Lane, Bryant, Eubanks and Dulaney, board certified anesthesiologists, seeking damages for the death of William E. Otts resulting from the alleged negligence and wantonness of the physicians. Otts was scheduled for orthopaedic surgery. His surgeon arranged for the defendant group of physicians to provide anesthesia service to him during the course of his surgery. The group employed Certified Registered Nurse Anesthetists (hereinafter CRNA's), registered nurses who receive two years of specialized on-the-job training in the administration of anesthesia. It was the group's policy to permit CRNA's to handle the anesthetic management of patients from the beginning of a surgical procedure until the end without the presence of a board certified M.D./anesthesiologist. The critical facts in this case center around the period during which Otts was anesthetized.
During the course of Otts's surgery on April 30, 1974, the CRNA employed by the defendants experienced difficulty in ventilating the patient Otts through the endotracheal tube. Dr. Lane, the nearest anesthesiologist, who was administering anesthesia in another operating room, was not called by the CRNA until Otts suffered a cardiac arrest. After surgery and upon leaving the operating room, Otts suffered from severe brain damage and was in a coma. He died six weeks later at Thomasville Hospital while still comatose.
Plaintiff offered evidence to support her contention that Otts's death resulted from lack of oxygen to the brain which was caused by an uncorrected airway obstruction. Furthermore, through expert testimony, plaintiff attempted to show that the failure of the CRNA to call for help at the moment she had difficulty ventilating Otts was a departure from accepted medical standards. The defendants contended that the lack of oxygen to the brain was caused by an "air embolus."
The jury returned a verdict in favor of plaintiff in the amount of $500,000.00. The defendants' post-trial motions were denied and they appeal.[1] We affirm.
Defendants raise eight issues on appeal. They claim the trial court committed reversible error:
(1) By giving certain charges requested by plaintiff and by refusing to give a particular charge requested by defendants pertaining to the standard of medical care;
*257 (2) By not requiring plaintiff to read the entire former testimony of an unavailable expert witness;
(3) By refusing to admit into evidence an article entitled "Pathophysiology in Intravenous Air Embolisms in Dogs";
(4) By requiring defendants to cross-examine one of plaintiff's witnesses during the presentation of plaintiff's case in chief;
(5) In refusing to strike the ad damnum clause of the amended complaint;
(6) In allowing plaintiff to comment to the jury regarding defendants' decision not to call a particular witness;
(7) In allowing plaintiff to argue defendant's daily income; and
(8) In allowing plaintiff to argue the value of human life during closing argument.

I
Defendants claim that the trial court committed reversible error by giving plaintiff's Requested Charges 1, 8 and 11.
Plaintiff's Requested Charge No. 1:
"The Court charges the jury that in performing professional services for a patient, a medical doctor has a duty to use that degree of learning and skill ordinarily possessed and used by members of his profession and specialty, and in the application of his skill and learning he is also under a duty to use ordinary care and diligence."
Plaintiff's Requested Charge No. 8:
"The court charges the jury that Drs. Lane, Bryant, Eubanks & Dulaney owed to William E. Otts the duty to exercise such reasonable care, skill and diligence in the treatment of William E. Otts which physicians in the same general neighborhood, and in the same line of practice, ordinarily have and exercise in a like case. The court further charges the jury that the same general neighborhood refers to a national medical neighborhood or national medical community, of reasonably competent physicians in the same line of practice acting in the same or similar circumstances. [Emphasis added.]"
Plaintiff's Requested Charge No. 11:
"The Court charges the jury that Drs. Lane, Bryant, Eubanks and Dulaney owed to William E. Otts the duty to exercise that degree of care, skill and diligence in their treatment of William E. Otts which reasonably competent physicians in the same line of practice in the national medical neighborhood or national medical community would have exercised under the same or similar circumstances. The Court further charges the jury that this duty to exercise such reasonable care, skill and diligence cannot be lowered by the physicians in Mobile County, Alabama, by generally accepting and engaging in a negligent standard of care."
Defendants complain that Charge No. 1 failed to condition defendants' duty on "that degree of care and skill as physicians and surgeons in the same general neighborhood, pursuing the same general line of practice ordinarily exercised in like cases." They cite Parrish v. Spink, 284 Ala. 263, 266, 224 So.2d 621 (1969), for this proposition. The entire charge must be reviewed to determine if there is reversible error. Wright v. Rowland, Ala., 406 So.2d 830 (1981). Our review reveals that the trial court, more than once, characterized defendants' duty in accord with this Court's opinion in Parrish, supra. Thus, we cannot say that defendants were prejudiced by the giving of Charge No. 1.
Issue is taken with Charges 8 and 11 because they describe the "same general neighborhood" as the "national medical neighborhood" or "national medical community." Defendants claim that these charges imposed a higher degree of care on physicians in the treatment of a patient than required by Alabama law. That is, defendants argue that the "same general neighborhood" rule, codified in Code of 1975, § 6-5-484(a), should not have been defined beyond its usual and customary meaning.
In Zills v. Brown, Ala., 382 So.2d 528 (1980), a plurality of this Court was of the opinion that "the language `same general *258 neighborhood' ... refer[s] to the national medical neighborhood or national medical community, of reasonably competent physicians acting in the same or similar circumstances." Id. at 532. (Emphasis in original.) We agree with that description for the same reasons given by the plurality, notably that:
"Locality rules have always had the practical difficulties of: (1) a scarcity of professional people in a locality or community qualified to testify; and (2) treating as acceptable a negligent standard of care created by a small and closed community of physicians in a narrow geographical region. Distinctions in the degree of care and skill to be exercised by physicians in the treatment of patients based upon geography can no longer be justified in light of the presently existing state of transportation, communications, and medical education and training which results in a standardization of care within the medical profession. There is no tenable policy reason why a physician should not be required to keep abreast of the advancements in his profession. [Id. at 532.]"
Defendants argue that, even if a national neighborhood standard applied in this case, the trial court committed reversible error in refusing to give defendant's Requested Charge No. 36, which stated:
"The Court charges the jury reasonably skilled physicians acting in the same or similar circumstances are not held to a national standard where it has been demonstrated that such a standard could not, because of justifiable circumstances, be adhered to."
That charge complies with the exception to the national standard of care enunciated in Zills, supra at 532. Therefore, defendants claim they were entitled to a charge excusing them from the national standard if justifiable circumstances were demonstrated. According to defendants, the facilities, equipment, availability of physicians and logistics on the date of the surgery prevented them from meeting the national neighborhood standard. We disagree.
Evidence demonstrating "justifiable circumstances" for not adhering to the national standard of care is admissible as a defense in a medical malpractice case in which noncompliance with that standard is in issue. "Justifiable circumstances" may include the circumstances of medical resources available to the medical practitioner and, by allowing proof of that circumstance, allowance is made for the type of local community, and its medical resources, in which the physician practices his profession. Cf. Brune v. Belinkoff, 354 Mass. 102, 235 N.E.2d 793 (1968). Allowance of "justifiable circumstances," moreover, assures that the local practitioner need not run the risk of being judged by a national standard which may be abstractly unaffected by local conditions.
In the present case, however, the record reveals through expert testimony that the national standard and the local standard, i.e., the Mobile standard, are the same. That is to say, the failure of the CRNA to call for assistance upon first realizing that she had a problem ventilating the patient was a departure from the accepted standard of care in Mobile as well as elsewhere in the national medical community. Consequently, the defendants were not prejudiced by the failure to give Charge No. 36 as it applied to a national standard of care because "justifiable circumstances" are not a defense under a local standard of care. Arguendo, even if the standards were not the same, no "justifiable circumstances" were shown to exist to prevent the CRNA from complying with the national standard, i.e., summoning Dr. Lane, an anesthesiologist, from another operating room in the same hospital when she first encountered a problem. Thus, the trial court did not err in refusing to give Charge No. 36.

II
Plaintiff called Dr. James Arens, professor in charge of the Department of Anesthesiology at the University of Texas Medical Branch in Galveston, by means of reading his former testimony from the first trial of this case. Defendants objected to *259 the court allowing plaintiff to read only the direct testimony of the witness. However, the cross-examination portion of the testimony had not been transcribed prior to the trial in question.
Defendant argues that the failure of the trial court to strike the testimony violated "the rule of compulsory completeness." That is, if testimony from a former trial is introduced, the entirety must be received in evidence. Chastain v. Brown, 263 Ala. 440, 82 So.2d 904 (1955). Nevertheless, the circumstances of this case excuse compliance with that rule. The record reveals that an agreement was reached at a pretrial conference providing that the depositions or prior testimony of any of the experts not available for trial could be used by either party. There is no indication that defendants requested the court's assistance in getting the cross-examination testimony transcribed or for a delay in the proceedings so that the testimony could be obtained. For these reasons, we find no merit in defendant's argument.

III
Defendants contend that the trial court erred in refusing to admit into evidence an article entitled, "Pathophysiology in Intravenous Air Embolisms in Dogs," which appeared in the journal Anesthesiology. A treatise, essay, or pamphlet on a subject of science which is testified to by an expert as being standard and trustworthy on the subject is admissible. Meadows v. Coca-Cola Bottling, Inc., Ala., 392 So.2d 825 (1981). However, "relevant extracts from medical treatises are not in themselves selfproving, but are admissible only when recognized and approved by the medical profession as standard." Berry v. Robertson, 285 Ala. 623, 631, 235 So.2d 657 (1970), quoting Smarr v. State, 260 Ala. 30, 36, 68 So.2d 6 (1953). Here, although experts testified that the publication Anesthesiology is standard and trustworthy, there is no evidence that the article contained within the journal is standard. Moreover, even if it had been error to exclude this exhibit, the error would be harmless as the content of the article was established by other evidence offered by defendants. McLemore v. Alabama Power Company, 289 Ala. 643, 270 So.2d 657 (1972).

IV
Plaintiff introduced by deposition the testimony of Dr. Stephen Prevoznik, an anesthesiologist. When the cross-examination portion of Dr. Prevoznik's deposition was reached, the trial court instructed defendants to read into evidence testimony which defendants claim they specifically desired to reserve and place on during their case in chief. Defendants argue that they should not have been required to introduce the evidence at that time.
The record shows that the trial court did not require defendants to introduce evidence, but rather ruled that if defendants wished to introduce the cross-examination, they should do it at the time specified by the court. The mode of conducting the examination of witnesses and the order of introducing evidence are matters within the discretion of the trial court, and the exercise of this discretion is not revisable by the appellate court. Drum & Ezekiel v. Harrison, 83 Ala. 384, 3 So. 715 (1887); accord, Landers v. Ramey, 245 Ala. 283, 16 So.2d 785 (1944).

V
Defendants argue that the trial court erred in refusing to strike and in reading to the jury the ad damnum clause of the amended complaint, which demanded judgment in the amount of one million dollars. The Medical Malpractice Act, Code of 1975, § 6-5-483, requires the ad damnum clause to be eliminated in complaints alleging medical liability. We withhold judgment on the constitutionality of that Act under § 43 of the Alabama Constitution since it has no application in this case because it became effective on September 23, 1975, after the alleged negligence in this case and the filing of the original complaint on June 17, 1975. We recognize the common law rule that statutes are in force from the date of their approval when no *260 time is fixed for them to take effect. National Security Ins. Co. v. Freeman, 281 Ala. 152, 199 So.2d 851 (1967). The trial court was correct in applying the law prevailing when suit was first filed, not § 6-5-483.

VI
Defendants contend that it was reversible error for the trial court to allow comments by plaintiff's counsel during the closing arguments to the jury on the failure of defendants to call Dr. Mostellar, a neurosurgeon, as a witness. Dr. Mostellar had examined the plaintiff's decedent and made certain notes which were admitted into evidence as part of the decedent's medical records. One notation by Dr. Mostellar stated that Otts, the decedent, would "have 90 percent return in three months." During closing arguments by plaintiff's attorney, the following occurred:
"[Plaintiff's counsel]: Mr. Brown talked about Dr. Mostellar's statement in that record. You know, if Dr. Mostellar was going to elaborate or expand on that and tell you that in his judgment that this man would be back in 60 or 90 days, I believe that he wouldn't be out on Spring Hill Avenue in his office. The Defendants would have him here and had him tell you
"[Defendant's counsel]: If Your Honor please, we're going to object to that. Dr. Mostellar was equally available to the Plaintiff to have him down here and explain to this jury what he meant by that 90 percent return in three months. We think it's unfair comment and move to exclude it and ask you to express that to the jury.
"THE COURT: Overruled.
"[Defendant's counsel]: We except."
We held in Donaldson v. Buck, Ala., 333 So.2d 786, 787 (1976), that the general rule is "that a party cannot comment in argument upon the failure of his opponent to call a particular witness if the witness is equally accessible to both parties." However, "being amenable to process is not the sole criterion for determining `equal availability' within the meaning of the rule." Id. at 788. The question before us, then, is whether, under the circumstances, Dr. Mostellar was equally accessible to both parties.
The defense in this case was on the issue of "causation." Defendants had to reasonably satisfy the jury that the lack of oxygen to Otts's brain was caused by something other than the CRNA's negligence, such as an air embolus, or that the damage was only temporary and, had he received proper post-operative care in the Thomasville Hospital, he would have recovered. The entry made by Dr. Mostellar in the medical records clearly indicated that testimony from him would be favorable to the defendants. It is not unreasonable to conclude that he would be friendly toward defendants and unfriendly toward plaintiff. Under these circumstances we cannot find that Dr. Mostellar was "equally available" to plaintiff as to defendants as that term is used in Donaldson and the cases discussed therein. Moreover, the trial court was in a better position to weigh the claims of equal availability. We do not find that the court abused its discretion in overruling the objection relative to the absence of the witness.

VII
Defendants also complain that the trial court erred by allowing plaintiff's counsel to argue defendant's daily income. The record reveals this argument:
"[Plaintiff's counsel]: What I'm saying is, if you take those four doctors and put them circulating, supervising CRNA's under the practice at that time, that $8,400.00 a day is reduced to $6,000.00 a day.
"[Defendant's counsel]: If Your Honor please, that is highly immaterial.
"[Plaintiff's counsel]: It is the evidence, Judge. I am not going to say whatproject that in any way. I'm just saying that
"THE COURT: Go ahead.
"[Plaintiff's counsel]: They would make one-third less according to figures in 1974.

*261 "[Defendant's counsel]: We object to this and ask your Honor to exclude it and instruct the jury to disregard it.
"THE COURT: I will in a minute."
The general objection made by defendants is insufficient. The overruling of such an objection by the trial court[2] will be affirmed on appeal unless the evidence objected to is inadmissible for any purpose and cannot be made legal by introducing other evidence or by otherwise framing the inquiry. Satterwhite v. State, Ala., 364 So.2d 359 (1978). See generally, Gamble, McElroy's Alabama Evidence, § 426.01(7)(10) at 797-802 (3d ed. 1977). We held in Miller v. Dacovich, Ala., 355 So.2d 1109 (1978), that the financial condition of the parties is never material unless directly involved in the determination of compensable damages. This action is one for wrongful death where only punitive damages are allowed. However, before there can be a reversal for improper argument, the statement must be made as a fact and not as an illustration. Southern Railway Co. v. Jarvis, 266 Ala. 440, 97 So.2d 549 (1957). Plaintiff's comment about defendants' daily income being reduced if they supervised the CRNA's was not a fact supported by the evidence. It appears to have been an illustration which we do not regard as being so inflammatory as to warrant reversal.
The record does not reflect that the trial court ever instructed the jury to disregard plaintiff's last comment in the portion of the argument quoted above. We consider that minor error to be one without injury, Rule 45, Alabama Rules of Appellate Procedure, particularly since defendants did not call the matter to the court's attention again.

VIII
Plaintiff's counsel closed his argument to the jury by comparing the damages to be awarded for a man's personal injuries and those to be awarded in a death action. Defendants made a continuing objection to the argument, though stating no ground, and now contend that the trial court erred in failing to sustain and correct the allegedly improper argument. However, in response to one objection by defendants contending that plaintiff was attempting to argue that she was entitled to damages based on the worth of the life of the decedent, the court said that was not the law. Again, it appears that this argument emphasized the difference in the damages which were authorized in an action such as this, i.e., one for wrongful death, and thus it was not inappropriate. Counsel's comment concerning the value of life, used in the context of wrongful death, has been held to be proper jury argument. Estes Health Care Centers, Inc. v. Bannerman, Ala., [1982] 411 So.2d 109 (1982). Additionally, a review of the court's instructions to the jury regarding punitive damages shows that they were complete, thereby having a curative effect.
There being no error requiring reversal, the judgment of the trial court is due to be, and is, affirmed.
AFFIRMED.
FAULKNER, JONES, EMBRY and ADAMS, JJ., concur.
ALMON and SHORES, JJ., concur in the result.
TORBERT, C. J., and MADDOX, J., dissent.
SHORES, Justice (concurring in the result):
I concur in the result only because I cannot agree that "the same general neighborhood" rule adopted by the legislature in § 6-5-484, Ala.Code 1975, was intended to mean the national medical community. I am not sure what "national medical community" means.
We all know that physicians, like lawyers, are trained in schools, some of which are *262 excellent and some of which are woefully inadequate. Physicians, like lawyers, are not tested by medical standardized tests and are not subjected to identical continuing medical education. It just seems to be unreasonable to say that a physician practicing in a rural Alabama County should be judged by the same standards as one practicing in New York or some other metropolitan area affording a greater opportunity to keep abreast of the very latest techniques and treatments.
I concur in the affirmance only because, in this case, the evidence showed that the defendant failed to follow the standard prevailing in Mobile and that practiced by other physicians under circumstances the same as or similar to those prevailing in Mobile.
ALMON, J., concurs.
TORBERT, Chief Justice (dissenting).
I respectfully dissent from that portion of the majority's decision that allows the giving of plaintiff's requested jury charge No. 8, thus adopting a national standard to apply to the medical community in Alabama. As I stated in my dissent in Zills v. Brown, 382 So.2d 528 (Ala.1980), physicians in Alabama are to be held to the degree of care and skill that physicians in the "same general neighborhood" pursuing the same general line of practice ordinarily exercise in like cases. Watkins v. United States, 589 F.2d 214 (5th Cir. 1979); Lea v. Family Physicians, P. A., 517 F.2d 797 (5th Cir. 1975); Parrish v. Spink, 284 Ala. 263, 224 So.2d 621 (1969); Orange v. Shannon, 284 Ala. 202, 224 So.2d 236 (1969); Moore v. Smith, 215 Ala. 592, 111 So. 918 (1927).
Yet the holding of the majority equates "same general neighborhood" with "national medical neighborhood." This is clearly contrary to the usual and customary meaning of "same general neighborhood," as well as the interpretation given that phrase by the courts of Alabama, by the Federal courts applying Alabama law, and by the legislature when it provided:
"In performing professional services for a patient, a physician's, surgeon's or dentist's duty to the patient shall be to exercise such reasonable care, diligence and skill as physicians, surgeons, and dentists in the same general neighborhood, and in the same general line of practice, ordinarily have and exercise in a like case. In the case of a hospital rendering services to a patient, the hospital must use that degree of care, skill and diligence used by hospitals generally in the community."
Code 1975, § 6-5-484. This standard has been consistently followed and has been firmly entrenched in Alabama law. With the adoption of § 6-5-484, it is obvious that the legislature intended for the "same general neighborhood" rule to keep its original meaning; that is, the locality rule. This mandate and expression of legislative intent cannot be ignored by this Court, and any change to a national community standard should be a matter of legislative prerogativenot a judicial one. See, Bly v. Rhoads, 216 Va. 645, 222 S.E.2d 783 (1976).
By equating "national medical neighborhood" with "same general neighborhood," the majority adopts the plurality opinion in Zills v. Brown, 382 So.2d 528 (Ala.1980). The majority also overrules a long line of Alabama cases that have adopted and followed the locality rule and interpreted the phrase "same general neighborhood" to mean the city or community in which the doctor practices and the surrounding areas.
I would hold that the trial court erred in giving plaintiff's requested jury charge No. 8, as it conflicts with the locality rule as set out in Alabama case law and in Code 1975, § 6-5-484. Therefore, I would reverse the decision and grant defendants' motion for a new trial.
MADDOX, Justice (dissenting).
I believe the Court committed reversible error in giving plaintiff's requested charge No. 8, which reads as follows:
"The court further charges the jury that the same general neighborhood refers to a national medical neighborhood or national medical community, of reasonably competent physicians in the same *263 line of practice acting in the same or similar circumstances." (Emphasis added.)
I cannot apply the harmless error rule because the instruction states an incorrect principle of law. The proper standard of care, in my opinion, is that I set forth, in a special concurring opinion, in Zills v. Brown, 382 So.2d 528, 533 (Ala.1980). Furthermore, the application of the harmless error rule in this case is made more difficult because of the trial court's action in permitting plaintiff's counsel to argue defendants' daily income. After examining the whole case, I believe the appellants have shown that they did not receive a fair trial, for the reasons I have stated; therefore, I would reverse.
NOTES
[1] The first trial of this case was declared a mistrial because the jury was unable to reach a verdict.
[2] We assume that the trial court overruled the objection by instructing plaintiff's counsel to "Go ahead."