While working on a construction project, Christopher LaCombe was injured when a scaffold on which he was standing collapsed; the scaffold had been supported by wooden poles constructed out of 2 x 4 pieces of lumber nailed together. One of the poles snapped and caused the scaffold to collapse. Pump jacks, manufactured by Precise Engineering, had been used to raise and lower the scaffold. A pump jack is a scaffolding device used to support a work platform; it can be jacked up and down a wooden pole.
LaCombe sued Precise Engineering, Inc., and others, alleging liability for his injuries. His claims against Precise Engineering were based on negligence and the Alabama Extended Manufacturer's Liability Doctrine. LaCombe alleged that Precise Engineering had negligently failed to warn him and other pump jack users of the danger in using the pump jacks with long poles. A jury returned a verdict in favor of LaCombe and against Precise Engineering, awarding compensatory damages of $2.7 million. The trial court entered a judgment pursuant to the jury verdict; following the denial of its motion for judgment notwithstanding the verdict, new trial, or remittitur, Precise Engineering appealed.[1]
Precise Engineering argues that LaCombe failed to prove that the alleged failure to adequately warn of the dangers associated with using the pump jacks was the proximate cause of LaCombe's accident. Precise Engineering contends that LaCombe failed to prove that he would have observed and read an adequate warning placed on the pump jacks and would have heeded the warning and thereby prevented the accident. LaCombe asserts that because the evidence reveals there were no warnings on the pump jacks, positive proof of what he would have done if a warning had been provided would have been speculative; LaCombe argues that under the principle stated in Restatement (Second)of Torts, § 402A (1965), Comment j, where there is no warning the law assumes *Page 1341 
that a warning would have been read and heeded and that he presented sufficient evidence at trial to support the jury's conclusion that a proper warning would have prevented his accident. It is clear from the record that Precise Engineering provided an instruction label to be used with the pump jacks and that this label instructed users on setting the pump jack and poles, on raising and lowering the pump jack, and on how to "pass a pump pole brace." The label also gave instructions on the care and maintenance of the pump jacks and stated:
 "PUMP JACK SCAFFOLDING SHOULD NOT CARRY MORE THAN 25 LBS PER SQUARE FOOT. THIS CAPACITY CONSIDERS A 4:1 SAFETY FACTOR AS REQUIRED BY OSHA STANDARDS WHEN INSTALLED ACCORDING TO INSTRUCTIONS."
The instruction label does not use the word "danger" or "warning."
LaCombe testified that he looked over these instructions from time to time, but that he already knew how to use the pump jacks and therefore did not really need to look at theinstructions. He testified that he had been instructed by David Graham, the foreman on the construction site, on how to use the pump jacks. There was also evidence that LaCombe was a careful worker who followed Graham's instructions. In light of the evidence that there were instructions on how to use the pump jacks, but no warning of the danger associated with using the pump jacks with long poles, the evidence that LaCombe did not need to read the instructions because he had been instructed by Graham on how to use the pump jacks and the evidence that LaCombe followed Graham's instructions and was a careful worker, we hold that LaCombe presented sufficient evidence that if there had been a warning of the danger associated with using the pump jacks with long poles, LaCombe would have read and heeded the warning.
Precise Engineering next argues that it was prejudiced by an improper reference by LaCombe during the trial to a change by Precise Engineering in its warning label and, therefore, that the trial court erred in denying its motion for a mistrial and its motion for a new trial. Specifically, Precise Engineering contends that LaCombe improperly commented on a subsequent remedial measure when, in questioning Precise Engineering's expert witness about the instruction label used on the pump jacks, LaCombe asked the expert witness whether he was aware that the warning had been modified and when LaCombe's counsel attempted to show the witness the "one that is in use now."
The record reveals that LaCombe asked Precise Engineering's expert witness whether he was aware that the warning had been modified and that the witness answered that he was not. Precise Engineering did not object to this question, and LaCombe then attempted to show the witness "one that is in use now." The witness responded to this question, but that response was inaudible to the court reporter. At this point, Precise Engineering objected and moved for a mistrial. The trial court sustained the objection to the reference to "one that is in use now" and denied the motion for a mistrial. Precise Engineering then made a motion in limine, asking the court to order that there be no further questions along this line. The trial court granted the motion in limine, prohibiting LaCombe from offering any evidence as to the alleged subsequent remedial modification of the label.
The law is clear, as Precise Engineering argues, that evidence of subsequent remedial measures is inadmissible unless that evidence is offered for limited purposes other than to show antecedent negligence. Phar-Mor, Inc. v. Goff,594 So.2d 1213, (Ala. 1992); Holland v. First National Bank of Brewton,519 So.2d 460 (Ala. 1987). In this case, however, because Precise Engineering did not object when the expert was asked whether he was aware that the warning had been modified and because the court sustained Precise Engineering's objection to LaCombe's attempt to show the alleged modification and granted its motion in limine prohibiting any further questioning as to subsequent modification, we hold that the trial court did not err in denying Precise Engineering's motion for a mistrial or its motion for a new trial on the basis that LaCombe *Page 1342 
had referred to a subsequent remedial measure.
Precise Engineering also argues that it was prejudiced by an improper reference by LaCombe during closing argument to a model warning and, therefore, that the trial court erred in denying its motion for a mistrial and its motion for new trial based on that ground. During his cross-examination of Precise Engineering's expert witness, LaCombe showed the witness a document marked as Plaintiff's Exhibit 57 and asked the witness whether pump jack users would be more likely to brace the pump jacks if the language on Plaintiff's Exhibit 57 was on the pump jacks. The trial court sustained Precise Engineering's objection to the question, and when LaCombe continued to ask the witness about the language on Plaintiff's Exhibit 57, the court sustained all of Precise Engineering's objections to the line of questioning, but denied its motion for a mistrial. The record reveals that even though LaCombe referred to Plaintiff's Exhibit 57, that exhibit was never admitted into evidence. Precise Engineering contends that during closing argument LaCombe published to the jury a model containing the same language as Plaintiff's Exhibit 57. LaCombe argues that he merely used, as a demonstrative aid, a poster showing an example of a warning that, in light of the expert testimony, would have been "proper."
The decision whether to grant or to deny a motion for a mistrial is within the trial court's discretion, and this Court will not reverse the trial court's denial of a mistrial based on improper statements unless it appears from the record that the statements were probably prejudicial to the complaining party. Georgia Cas. Sur. Co. v. White, 582 So.2d 487
(Ala. 1987). Moreover, before this Court will reverse the trial court's denial of a motion for new trial based on improper argument, it must be shown that that argument was made as a fact and not as an illustration. Southern Ry v. Jarvis,266 Ala. 440, 97 So.2d 549 (1957). See, also, Drs. Lane, Bryant,Eubanks Dulaney v. Otts, 412 So.2d 254 (Ala. 1982).
After reviewing the record in this case, we conclude that the statements made by LaCombe during closing argument regarding a "model" warning were not made as fact, but were made as an illustration and that the statements were not probably prejudicial to Precise Engineering. We hold that the trial court did not err in denying Precise Engineering's motions for a mistrial or a new trial based on these arguments.
Precise Engineering next argues that the trial court erred in denying its motions for mistrial and new trial because, it contends, during closing argument, LaCombe "emphasized the importance of sending a punitive message to the scaffolding industry in order to deter similar conduct in the future, notwithstanding the absence of any claim for punitive damages."
The record reveals that during closing his closing argument, LaCombe's counsel stated, in part:
 "Your decision is going to be extremely important, not only to [this young man], but also to the defendant and to the other people who make and sell these products. They're listening to what you're going to say. You've heard about the associations, the scaffolding associations, the ladder associations, and the newsletters that go out. These people in this industry listen. The information goes out. It speaks to them and they will be interested in what you have to say in this verdict that you return.
 "They want to know whether they can keep on selling these products just like this. They want to know can we keep on selling them, without any warnings, or should we, must we, put a warning on here that people who use these will know that they are subjected to a severe risk of personal injury if they use them without adequate bracing.
". . . .
 "It will be important to the defendant, and it will be important to the other manufacturers and people who sell pump jacks. You will tell them by your decision whether they should modify and correct the pieces of paper that they put on these things, whether they should put a warning on there, and there is no warning on there now, and I will go over that with you in *Page 1343 
just a minute, or will they continue to sell them just like they are and send them out into commerce for people to use.
 "They will be listening to what you have to say, these associations, these trade associations that make and sell these products. But, you know, your decision is going to be important to somebody else. It's going to be important to some other young man that's out there, some other twenty-two year old young man who's got a wife and child who's out there working on somebody else's project —"
Precise Engineering objected at this point, and the trial court sustained the objection. LaCombe's counsel then stated, "Your message must reach the people who sell these —." The trial court sustained Precise Engineering's objection to this argument, and later, in charging the jury, it instructed the jury only as to compensatory damages.
It is clear from the record that the trial court sustained Precise Engineering's objections to any argument by LaCombe about sending a message to the scaffolding industry. Moreover, because the trial court did not charge the jury that it could award LaCombe punitive damages, we fail to see how any argument about sending a message to the industry probably prejudiced Precise Engineering. See Georgia Cas. Sur. Co. v. White, supra. Accordingly, we hold that the trial court did not err in denying Precise Engineering's motion for a new trial on this ground.
Precise Engineering's final argument is that the jury's award of $2.7 million in compensatory damages is excessive. After carefully reviewing the record, however, we conclude that the jury's verdict is clearly supported by the evidence. LaCombe presented evidence that he suffered extensive and severe personal injuries as a result of his accident, including permanent loss of control over his bladder and bowels; that he continues to suffer pain in his back and legs; and that he has suffered, and will continue to suffer, mental anguish as a result of his injuries. There was also evidence that LaCombe has undergone surgeries and numerous other medical procedures and that he has incurred medical expenses of approximately $41,375. The record further reveals evidence that LaCombe had suffered a loss of income of $77,902 and would in the future suffer a loss of income of $478,406. There was evidence that LaCombe had received $214,000 in settlements with other defendants in this case; the trial court instructed the jury that if it found that LaCombe was entitled to recover from Precise Engineering, then it should give Precise Engineering a credit for that amount. Given the evidence of LaCombe's permanent injuries and his pain and suffering, we cannot conclude that the amount of the jury award, which was based on a credit for the amount of the settlements with the other defendants, was excessive.
The judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, ADAMS, HOUSTON and INGRAM, JJ., concur.
[1] The judgment did not involve the other defendants and those other defendants are not parties to this appeal.