382 So.2d 528 (1980)
Brenda ZILLS, etc.
v.
Dr. Harry G. BROWN et al.
78-322.
Supreme Court of Alabama.
March 28, 1980.
*529 Oren R. Lewis, Jr. and Gary R. Sheehan of Lewis, Wilson, Lewis & Jones, Arlington, Va., B. T. Gardner, Jr. of Stansell, Gardner & Stolsworth, Tuscumbia, for appellant.
Robert O. Cox of Poellnitz, Cox, McBurney & Jones, Florence, for appellees.
PER CURIAM.
This appeal by plaintiff Brenda Zills, widow and administratrix of the estate of Thomas Jerry Zills, is from judgment entered upon a jury verdict in favor of defendants, The Florence Clinic, Dr. Harry G. Brown and Dr. W. S. Bradley, Jr., in a medical malpractice action. We reverse and remand.
Both plaintiff and defendants specify numerous issues in their respective briefs, but the dispositive issue in this case is whether the trial court erred to reversal when it applied the locality rule to exclude testimony in behalf of plaintiff by medical experts, more particularly the testimony of plaintiff's medical expert witness, Dr. John Carpenter, Jr., concerning the standard of treatment administered to Thomas Zills by Dr. Brown.
This is a medical malpractice action seeking damages for the death of Thomas Zills resulting from the negligence of Drs. Brown and Bradley, both of whom are board certified urologists,[1] for failing to timely diagnose and properly treat Zills' cancer of the testicle (a type known as testicular seminoma) by timely and proper removal of the diseased testicle followed by radiation therapy. Although Zills had also been examined and treated by Dr. Brown's partner, Dr. Bradley, he was the patient of Dr. Brown and primarily in the care of the latter doctor.
During the trial of this action four medical experts testifying in behalf of plaintiff were prohibited by the trial court from giving their respective opinions as to whether the treatment of Zills' testicular seminoma administered by Dr. Brown was in accord with the requisite standard of medical care generally adhered to in treating that disease. The prohibition was based upon the fact that neither could state he was personally familiar with the standard of care followed by urologists, or other physicians, treating seminoma in the Florence, Alabama community. Three of those four experts are out-of-state physicians who are highly qualified regarding the care and treatment of patients afflicted with seminoma; however, none of them are personally familiar with the standard of treatment obtaining in the Florence community.
The fourth is Dr. John Carpenter, Jr., who: (1) is a specialist in the treatment of cancer; (2) is on the faculty and staff of the School of Medicine of the University of Alabama at Birmingham; (3) is a consulting physician participating in the medical information system via telephone (MIST) at the Medical Center of that school of medicine, in which capacity he has daily contact with physicians from all parts of the state and assists them in the diagnosis and treatment of cancer; (4) has consulted with numerous *530 doctors in North Alabama in the general vicinity of Florence concerning the treatment of various types of cancer; (5) has lectured on at least one occasion in Florence at a cancer seminar; and (6) testified he was familiar with the degree of care, skill and diligence which is ordinarily used by physicians treating cancer in North Alabama and in the vicinity of Florence.
The trial court refused to allow Dr. Carpenter to testify to the quality of the treatment administered Zills by defendants because Dr. Carpenter could not state he knew:
"* * * the degree of care, skill and diligence which was ordinarily possessed and used by physicians and surgeons in the general vicinity or general community of Florence, Alabama, during the period of 1974, 1975 with reference to their treatment of seminoma."
Apparently, the trial court based its ruling on the further fact that Dr. Carpenter could not testify he knew whether physicians and surgeons in the Florence vicinity or community treated seminoma in the same manner as other types of cancer were treated during the years 1974 and 1975.
In medical malpractice actions, Alabama adheres to the so-called "same general neighborhood" rule regarding the standard of care owed the patient by the physician. The rule has been stated as follows:
"In attending a patient a physician or surgeon undertakes to exercise that degree of care and skill as physicians and surgeons in the same general neighborhood, pursuing the same general line of practice ordinarily exercise in like cases. * * *" (Emphasis added.) Parrish v. Spink, 284 Ala. 263, 266, 224 So.2d 621, 623 (1969). See also § 6-5-484(a), Code 1975.
The plaintiff argues, and conceded at trial, that Alabama follows the so-called "strict locality" rule. This is inaccurate. The "strict locality" rule limits the standard of care owed to that degree of care exercised by physicians in the same geographical locality or community who are engaged in the same type practice. There is a significant distinction between the "strict locality" rule and the "same general neighborhood" rule, inasmuch as the latter is a liberalization of the former. See generally, Annot. 37 A.L.R.3d 420 (1971).
It is apparent from the record there was confusion as to which rule the trial court was applying. The confusion is occasioned by the trial court's use of interchanging terms such as Florence, Alabama, community, neighborhood, vicinity, locality, etc. Furthermore, these terms were never defined by the trial court when plaintiff's experts were asked by it whether they knew the standard of care exercised by physicians or surgeons in the Florence, Alabama, community in treating seminoma during 1974, 1975. It appears, from a reading of the transcript, in its entirety, the trial court was applying a very strict locality rule regardless of the words or phrases it used when referring to the standard of care.
Plaintiff vigorously urges that Alabama should abolish its present rule and adopt a rule of a national standard of care or, at least, a state-wide standard of care for physicians, particularly for specialists. We cannot, in this appeal, address that argument as error, because the record does not reflect a proper challenge to the "same general neighborhood" rule. We will, however, comment on this later in this opinion.
Plaintiff contends she argued extensively, before trial, that the present Alabama "same general neighborhood" rule does limit the standard of care owed by doctors and should be abolished; however, such arguments are not a part of the record. This court is bound by the record before it; and the burden is on the appellant to perfect and prosecute the appeal as required by law and the rules of this court and to see that all proceedings before the trial court are contained in the record on appeal. See Wilson v. Smith, 289 Ala. 374, 267 So.2d 446 (1972); J. H. Morris, Inc. v. Indian Hills, Inc., 282 Ala. 443, 212 So.2d 831 (1968). Plaintiff further omitted to preserve a challenge to Alabama's "same general neighborhood" rule by failing to *531 properly object, stating adequate grounds, to the trial court's oral instructions or its refusal of her written requested instructions to the jury regarding this question. See Lollar v. Alabama Power Co., 371 So.2d 9 (Ala.1979); Odom v. Linsey, 365 So.2d 664 (Ala. 1978).
We recognize that locality rules regarding standards of medical care, whether strict or liberalized, have come under attack in many jurisdictions, as well as by certain legal commentators. See, e. g., Speed v. State, 240 N.W.2d 901 (Iowa 1976); Blair v. Eblen, 461 S.W.2d 370 (Ky.1970); Shilkret v. Annapolis Emergency Hospital Association, 276 Md. 187, 349 A.2d 245 (1975); Shier v. Freedman, 58 Wis.2d 269, 206 N.W.2d 166 (1973). See generally, Annot., 37 A.L.R.3d 420 (1971); Annot., 21 A.L.R.3d 953 (1968); Medical Specialties and the Locality Rule, 14 Stan.L.Rev. 884 (1962); The Rise and Gradual Fall of the Locality Rule in Medical Malpractice Litigation, 18 De Paul L.Rev. 408 (1969). By holding that plaintiff did not properly preserve a challenge to Alabama's locality (general neighborhood) rule, we are not determining that we could not examine the validity and viability of that rule if a proper challenge to it was presented for our review.
From the record, it is apparent that plaintiff attempted to try the case within Alabama's "same general neighborhood" rule as that rule was interpreted by the trial court. It is also clear the trial court committed reversible error in its application of the rule when Dr. Carpenter was not permitted to give his opinion regarding the standard or quality of care Thomas Zills received from defendant doctors.
It appears without question that Dr. Carpenter was competent to testify as a medical expert about the treatment administered to Thomas Zills regardless of which rule is applied as to defendant doctors' duty of care. Ordinarily, the law requires expert medical testimony as to what is or is not the proper practice, treatment, or procedure, in a medical malpractice case; the lack of such evidence is a lack of proof of negligence and is fatal to a plaintiff's case. Parrish v. Spink, supra. Some of the exceptions to this rule are stated in Parrish. Among other exceptions are those instances where a recognized standard or authoritative medical text or treatise is employed to prove what is or is not proper practice, treatment, or procedure. The trial court's application of the locality rule made it impossible, as a practical matter, for plaintiff to meet the burden of proof concerning the proper degree of care owed Zills. The trial court held, essentially, that the only persons qualified to render expert testimony about the quality of the treatment administered Zills were those physicians qualified to treat seminoma, a rare cancer, in a very narrow region ambiguously referred to as the Florence community, during the period 1974, 1975.
This application of the locality rule, if applied consistently (it was not), made the two defendant doctors the only medical experts qualified to testify about the proper standard of care owed Zills. Obviously, the rule was not applied consistently when one of the defense witnesses, a local pathologist, was held competent to testify about the quality of treatment Zills received even though that pathologist did not treat seminoma or cancer. No error was preserved in this respect, however, because plaintiff did not object to the questions put to that witness on this subject.
As mentioned earlier, the "same general neighborhood" rule is a liberalized modification of the "strict locality" rule. Again, see generally, Annot., 37 A.L.R.3d 420 (1971). Jurisdictions applying the "neighborhood" rule recognize that an inadequate standard of care might result if the degree of care exercised should be merely that of the community in which the defendant practices. See Geraty v. Kaufman, 115 Conn. 563, 162 A. 33 (1932). See also, Fitzmaurice v. Flynn, 167 Conn. 609, 356 A.2d 887 (1975). In Geraty, the Connecticut court recognized that a physician might reasonably be expected to know the practices and methods of physicians in similar communities outside his own community and, therefore, it would be proper for a physician to testify to the *532 general practice throughout the state. See also, Katsetos (Estate of Katsetos) v. Nolan, 170 Conn. 637, 368 A.2d 172 (1976). Other courts hold that an out-of-state expert may testify if the expert is familiar with the standard of care observed in defendant's community, or a similar community, even though the standard of care observed is that of skilled physicians and surgeons in the "vicinity" of the defendant's community. See, e. g., Riley v. Layton, 329 F.2d 53 (10th Cir. 1964) (applying the law of Utah). Even where there is adherence to a "strict locality" rule, some jurisdictions only require expert witnesses to possess such knowledge of the applicable standard of care as to enable the witness to render an informed opinion. Certainly, these jurisdictions do not require medical experts to practice or reside in defendant-physician's community. See, e. g., Raitt v. Johns Hopkins Hospital, 274 Md. 489, 336 A.2d 90 (1975). See also Loftus v. Hayden, 391 A.2d 749 (Del.1978).
Although we cannot so hold in this case, for reasons previously stated, we are inclined to the view that Alabama's "same general neighborhood" rule does in fact encompass a national standard of care for reasonably skilled physicians acting in the same or similar circumstances, unless there is evidence that demonstrates such a national medical neighborhood standard could not, because of justifiable circumstances, be adhered to. We deem the language "same general neighborhood" to refer to the national medical neighborhood or national medical community, of reasonably competent physicians acting in the same or similar circumstances. We are of the opinion that Alabama's neighborhood rule, which was recently codified in § 6-5-484(a), Code 1975, is an enlightened one which takes into account the realities extant in the present day national medical world, community, or neighborhood; no matter which term one chooses. The rule logically recognizes that today there is no lack of opportunity for a physician or surgeon to keep abreast of the advances made in his profession and to be familiar with the latest methods, procedures, and practices adopted.
Locality rules have always had the practical difficulties of: (1) a scarcity of professional people in a locality or community qualified to testify; and (2) treating as acceptable a negligent standard of care created by a small and closed community of physicians in a narrow geographical region. Distinctions in the degree of care and skill to be exercised by physicians in the treatment of patients based upon geography can no longer be justified in light of the presently existing state of transportation, communications, and medical education and training which results in a standardization of care within the medical profession. There is no tenable policy reason why a physician should not be required to keep abreast of the advancements in his profession.
In this case, Dr. Carpenter had adequate knowledge of the standard of care utilized in the treatment of cancer in the "neighborhood" of Florence, Alabama, so that he should have been allowed to give his informed opinion of the proper treatment Zills should have received. When Dr. Carpenter was not permitted to give such testimony, reversible error occurred.
Having decided that a locality rule was improperly applied and the case should be remanded for new trial, the other allegations of error by plaintiff are pretermitted from consideration and need not be addressed.
For the reasons assigned the judgment is due to be, and is hereby reversed, and the case remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
BLOODWORTH, FAULKNER, JONES and EMBRY, JJ., concur.
ALMON, SHORES and BEATTY, JJ., concur in result.
MADDOX, J., concurs specially.
TORBERT, C. J., dissents.
*533 MADDOX, Justice (concurring specially).
I concur in the result only, because I cannot agree with the plurality's suggestion that Alabama should adopt a national standard of care for physicians who perform specialized professional services. On the other hand, neither can I agree with the Chief Justice, who dissents, because I think that he interprets Alabama's "same general neighborhood" rule much too narrowly. Because I am unable to agree with either the plurality or the dissent, I feel compelled to delineate the specific area of my disagreement, and by way of this special concurrence, I hope to point out why I think Alabama's "same general neighborhood" rule, coupled, as it is, with the "same general line of practice" requirement, is not that difficult to apply, and why I think that an expert witness should be permitted to testify, if he can state that he is familiar with the standard of care ordinarily practiced by other physicians, actual or hypothetical, who are similarly situated with the defendant physician, that is, with regard to the general character of the community in which the defendant physician practices, and as to the general line of practice in which he is engaged. I will also suggest how such a rule would carry out the original intent of the so-called "locality rule," by providing the fact finder with credible evidence of the standard of care a "hypothetical" doctor, acting under the same or similar circumstances, would have exercised.
First, let me state that I do not believe that the "locality rule" was designed to immunize doctors from liability for their negligent acts. At best, it was fashioned to help the fact finder decide when a doctor had failed to follow the appropriate standard of care.
The latest chapter in the history of the "locality rule" was written in 1976, when the legislature adopted the Alabama Medical Liability Act, which, on the one hand, was designed to assist providers of medical services in coping with an ever increasing number of medical malpractice suits, but which, on the other hand, provided that providers of medical services should adhere to a prescribed standard of care, which, as regards physicians, surgeons and dentists, was stated as follows:
"(a) In performing professional services for a patient, a physician's, surgeon's or dentist's duty to the patient shall be to exercise such reasonable care, diligence and skill as physicians, surgeons, and dentists in the same general neighborhood, and in the same general line of practice, ordinarily have and exercise in a like case. . .." Code 1975, § 6-5-484.
This standard of care which the legislature adopted follows very closely the standard of care specified and formulated in prior court decisions, and commonly denominated the "locality rule." Because the standard of care established by the legislature does track former court decisions, I would be persuaded to follow the reasoning of the Chief Justice, and indeed that of the trial judge, but for the fact, as I have stated before, that I think both the trial judge and the Chief Justice interpret the "same general neighborhood" rule much too restrictively. I especially feel that the Chief Justice is mistaken when he suggests that the result we reach today effectively overrules prior decisions. I do not think so.
I think that the problem with the "locality rule" results from the fact that courts, from the beginning, have taken a simple rule and have made it much too complex. The original purpose of the so-called "locality rule" was to allow an expert to assist the jury by testifying to the standard of care a "hypothetical" physician, similarly situated, would have exercised. In ordinary negligence cases, the jurors themselves are able to determine what a "reasonable man" would have done, but when they are asked to determine whether a professional person has been negligent or not, they need assistance from other professionals to determine what a "reasonable professional" would have done, under similar facts and circumstances. The "locality rule" was designed to assure a doctor that he would be measured against a doctor similarly situatedno more, no less.
*534 In an ordinary negligence case, the jury is instructed that negligence is the doing of an act, or the failure to do an act, which a reasonable, prudent man would not have done, or would have done, under similar facts and circumstances. In a medical malpractice case, the "reasonable, prudent man" test is inappropriate, but why shouldn't an expert, who is shown to have sufficient knowledge of the profession and how it is practiced, as Dr. Carpenter was here, be permitted to give his opinion on the standard of care which a reasonable, prudent physician, acting under similar facts and circumstances, would have done or would not have done? Wouldn't such a question give to a defendant doctor the benefit of having his conduct measured against a "hypothetical doctor" who was practicing in the "same general neighborhood" and in the "same general line of practice?" I think so; therefore, I think the defendant doctor would get all the protection the "locality rule" was ever designed to give him.
Certainly, the "locality rule," fashioned for a particular purpose, was not designed to immunize, but was drafted as it was to make sure that a doctor, whether practicing in a small community or in an urban medical complex, would be measured against a "hypothetical doctor," who was similarly situated.
Construed in this manner, the rule would provide that professionals called as witnesses would be better able to understand the scope of the rule, courts would be better able to apply it, and jurors, properly instructed, would be better able to comprehend whether the defendant was liable.
TORBERT, Chief Justice (dissenting).
I respectfully dissent from that portion of the plurality opinion which holds that the trial judge improperly applied the locality rule and committed reversible error in refusing to admit the testimony of Dr. Carpenter on the ground that he lacked adequate knowledge of the standard of care utilized in the treatment of cancer in the "neighborhood" of Florence, Alabama. I would hold that the trial court properly applied the locality rule as it is set forth in our case law[1] and in the 1975 Code of Alabama,[2] and I therefore would affirm.
The degree of care and skill to which a physician is held under Alabama law is that degree of care and skill that physicians in the same general neighborhood pursuing the same general line of practice ordinarily exercise in like cases.[3] Black's Law Dictionary defines "neighborhood" as: "A place near; an adjoining or surrounding district; a more immediate vicinity; vicinage." Citing Connally v. General Construction Company, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322. Black's Law Dictionary (5th ed. 1979).
The plurality opinion, in dicta, states:
Although we cannot so hold in this case, for reasons previously stated, we are inclined to the view that Alabama's "same general neighborhood" rule does in fact encompass a national standard of care for reasonably skilled physicians acting in the same or similar circumstances, unless there is evidence that demonstrates such a national medical neighborhood standard could not, because of justifiable circumstances, be adhered to. We deem the language "same general neighborhood" to refer to the national medical neighborhood or national medical community, of reasonably competent physicians acting in the same or similar circumstances.
The expansive interpretation which the plurality prefers to give to the term "same general neighborhood" is in direct conflict with the interpretation given to that term *535 by the Fifth Circuit Court of Appeals applying Alabama law. In Watkins v. United States, 589 F.2d 214 (5th Cir. 1979), that court, applying Alabama law, took note that the plaintiff's witness qualified as an expert on the subject of the standard of care of physicians in the "same general neighborhood" as the defendant doctor. The "same general neighborhood" as applied by the Fifth Circuit in that case had reference to the city and surrounding areas in which the defendant doctor practiced:
Dr. Corley, who qualified as an expert in medical practices in both the military and the Huntington [Huntsville?], Alabama area, indicated that the practice of prescribing a large amount of Valium to an unknown patient without asking the patient if he had a history of mental problems and without checking for records with a psychiatric clinic on the same military installation fell below the standard of care in the medical community. A doctor's treatment is negligent if it falls below that standard of care.
Watkins v. United States, 589 F.2d 214 at 217 (5th Cir. 1979) (emphasis added). In Lea v. Family Physicians, P.A., 517 F.2d 797 (5th Cir. 1975), the Fifth Circuit Court of Appeals, applying Alabama law, held that there was insufficient evidence to present a jury issue as to whether the physician was negligent in failing to give the patient specific instructions to report any worsening of her condition, but took note that the climax of the testimony given by plaintiff's expert witness was as follows:
Q. . . . I'll ask you whether or not you have a professional opinion as to whether the care and treatment given Mrs. Lea by Dr. Grant or Dr. Haynes during the time she was under their care was good, acceptable medical care and treatment in the general vicinity of Pell City, Alabama, by general practicing doctors?
A. Yes, sir, I think it was.
Lea v. Family Physicians, P.A., 517 F.2d 797 at 801 (5th Cir. 1975).
The term "same general neighborhood" as it has evolved and has been interpreted by the courts of Alabama and federal courts applying Alabama law was codified by the legislature in Code 1975, § 6-5-484.
In performing professional services for a patient, a physician's, surgeon's or dentist's duty to the patient shall be to exercise such reasonable care, diligence and skill as physicians, surgeons, and dentists in the same general neighborhood, and in the same general line of practice, ordinarily have and exercise in a like case.
Code 1975, § 6-5-484 (emphasis added).
The interpretation of the "same general neighborhood" as the same community or city in which the doctor practices and its surrounding areas is solidly entrenched in Alabama case law. The legislature of Alabama manifested in Code 1975, § 6-5-484, its intention to adopt the locality rule as it is set forth in the case law of Alabama. This express manifestation of legislative intent should not be ignored by this Court. The abandonment of the locality rule is a legislative, not a judicial, prerogative. Bly v. Rhoads, 216 Va. 645, 222 S.E.2d 783 (1976).
The plurality argues that its broad interpretation of the locality rule is dicta and that its reversal of the trial court is in fact based on the following: "In this case Dr. Carpenter had the adequate knowledge of the standard of care utilized in the treatment of cancer in the `neighborhood' of Florence, Alabama so that he should have been allowed to give his informed opinion of the proper treatment Zills should have received." Unless the plurality is implicitly giving the term "neighborhood" the expansive interpretation favored by the plurality in dicta, then the record fails to support the above statement of the plurality:
BY THE COURT:
Q. Do you know the degree of care, skill, and diligence which was ordinarily possessed and used by physicians and surgeons in the general vicinity or general community of Florence, Alabama, during the period of 1974, 1975, with reference to the treatment of seminoma?
A. No.
*536 R. 886.
BY THE COURT:
Q. Do you know whether the physicians and surgeons in the Florence vicinity or general community treated seminoma the same as they did other types of cancer in the years 1974 and '75?
A. Specifically about seminoma in Florence, I do not know.
MR. LEWIS: WE OBJECT TO THE "FLORENCE", IF IT PLEASE THE COURT.
BY THE COURT:
Q. Well, the question is not specifically Florence but in the general vicinity or general community of the Florence area and with the specific years '74 and '75.
A. I would say I do not know.
THE COURT: All right.
R. 887.
The plurality's holding implicitly overrules a long line of Alabama cases[4] which have adopted the "same general neighborhood" standard and have interpreted that phrase to mean the city or community in which a doctor practices and the surrounding areas. If the plurality wishes to rewrite Code 1975, § 6-5-484, so that a national standard of care rather than "the same general neighborhood" standard is used to judge a doctor's conduct, the plurality should at least recognize explicitly that they are overturning the established Alabama case law on this subject and ignoring the Alabama statute on point.
I would hold that the trial court properly applied the locality rule as set forth in the case law of Alabama and codified in the 1975 Code of Alabama, and that the trial court properly refused to admit the testimony of Dr. Carpenter and therefore the ruling of the trial court should be affirmed.
NOTES
[1] To become a board certified urologist a doctor must graduate from a medical school accredited by the American Medical Association, complete an internship and residency in urology in programs accredited by the American Medical Association, and pass both oral and written national board examinations concerning urological diseases and treatment.
[1] Moore v. Smith, 215 Ala. 592, 111 So. 918 (1927); Orange v. Shannon, 284 Ala. 202, 224 So.2d 236 (1969); Parrish v. Spink, 284 Ala. 263, 224 So.2d 621 (1969); Lea v. Family Physicians, P.A., 517 F.2d 797 (5th Cir. 1975); Watkins v. United States, 589 F.2d 214 (5th Cir. 1979).
[2] Code 1975, § 6-5-484.
[3] Note 1, supra.
[4] Note 1, supra.