**Bertha MORRISON, Plaintiff-Appellant,**

v.

**WASHINGTON COUNTY, ALABAMA, et al., Defendants-Appellees.**

No. 81–7778.

United States Court of Appeals, Eleventh Circuit.

March 17, 1983.

Blacksher, Menefee & Stein, Larry T. Menefee, Mobile, Ala., for plaintiff-appellant.

Carroll H. Sullivan, James J. Duffy, Jr., Mobile, Ala., for Dr. Paul Petcher.

Frank G. Taylor, Mobile, Ala., for Wheat.

Peter V. Sintz, Robert C. Campbell, III, Mobile, Ala., for Washington County, Ala., Turner, Sullivan, Carpenter, Dees, Armstrong.

Mack B. Binion, Mobile, Ala., for Washington Co. Hosp.

Before GODBOLD, Chief Judge, FAY and SMITH *, Circuit Judges.

FAY, Circuit Judge:

Bertha Morrison, administratrix of the estate of Sylvester Morrison, appeals the district court's judgments, summary and final, in favor of the defendants, in an action filed pursuant to 42 U.S.C. Section 1983 against the Washington County (Alabama) Hospital Association, Inc., Dr. Paul Petcher, Washington County, five commissioners of Washington County and William Wheat, Sheriff of Washington County. After careful consideration of the district court's judgments, we reverse and remand, 521 F.Supp. 947.

## FACTUAL BACKGROUND

On November 7, 1978, Sylvester Morrison sought treatment for his diabetic condition

---

* Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

at Washington County Hospital, in Chatom, Alabama, approximately thirty miles from his home. Morrison had been a patient at this hospital, under the care of Dr. Paul Petcher and other doctors, on numerous occasions during the preceding years, for diabetes and other conditions. During this visit, Morrison was being treated primarily for diabetes, when he was diagnosed as suffering from delirium tremens, a severe form of alcohol withdrawal.[1] His condition worsened and Morrison became irrational, agitated, restless and was hallucinating.

Dr. Petcher determined that Morrison should not remain at the hospital, and directed a hospital staff member to call the sheriff's office. The staff member spoke to Jesse Touchstone, the jailer on duty, and requested that an officer be sent to the hospital. Touchstone radioed a request and Bickerstaff, a Chatom city policeman responded to the call by going to the hospital.

When he realized the call was concerning a hospital patient, Bickerstaff telephoned Sheriff Wheat at home. Wheat told Bickerstaff that it was all right to proceed if Dr. Petcher approved. A sedated Morrison was taken from his hospital room in a wheel chair to the police car. Dr. Petcher stated that he told the officer to check on Morrison every hour, did not direct the officer to charge Morrison with a criminal offense and did not describe Morrison as drunk.

Morrison was taken to the Washington County jail, placed in a one person cell, and charged with public drunkenness. Touchstone, the jailer, testified in deposition that he had no first aid or medical training, that he was never told anything about giving Morrison any medicine, that he thought Morrison was drunk, and that he wasn't given any instructions to call a doctor or nurse or any other special instructions concerning Morrison. Touchstone also stated that Morrison was hollering and beating his fists and head against the walls. Around four a.m., Touchstone looked in the cell with his flashlight and could not see Morrison moving or breathing. He then telephoned Sheriff Wheat to come to the jail.

■ The autopsy report prepared by the Alabama Department of Forensic Sciences and submitted to the District Attorney stated that the cause of Morrison's death was "acute alcohol abstinence syndrome."[2]

One year after Sylvester Morrison's death, Bertha Morrison, as administratrix of his estate, filed an action in federal district court against the hospital, Dr. Petcher, the county, the county commissioners and Sheriff Wheat. The complaint alleged claims pursuant to 42 U.S.C. Sections 1983, 1985(3), 1986[3] and 1988 as well as a pendent claim for wrongful death under state law.

The procedural history of this case in the district court is confusing at best. The district court entered summary judgments,

1. While not provided by the parties as evidence for the district court and not relied upon by this court as authoritative, the following definition of delirium tremens is nevertheless informative:

A psychic disorder involving visual and auditory hallucinations found in habitual and excessive users of alcoholic beverages, usually seen during withdrawal from alcohol.... NURSING PROCEDURE: The patient must never be left alone even momentarily because attempts at suicide are frequent in such cases. The nursing of delirium needs endless patience, tact, and understanding. Restraint should be avoided if possible.
CAUTION: This syndrome is a true medical emergency that should be treated aggressively due to the possibility of death.
Taber's Cyclopedic Medical Dictionary at 379 (Philadelphia: F.A. Davis Company, 14 ed. 1981).

2. In their brief, appellees Sheriff Wheat, Washington County and the county commissioners contend that the State Forensic Sciences report is not part of the record on appeal. This report was admitted by the district court during the trial as Plaintiff's Exhibit 1 (Tr. at 29). The district court later considered the case as against the Sheriff as "submitted on the record of the case as it has presently progressed." (Tr. at 201). However, when the court inquired of plaintiff's counsel which exhibits he wished considered in the resolution of the claims against Sheriff Wheat, plaintiff's counsel failed to mention Exhibit 1. (Tr. at 202). Nevertheless, the autopsy report, having been duly admitted into evidence, is part of the record on appeal.

3. Morrison has abandoned her claims under 42 U.S.C. Sections 1985 and 1986.

dismissed claims, vacated summary judgments, granted a directed verdict and entered one judgment on the merits. Because each of the defendants below are in a different procedural posture on this appeal, we shall consider each defendant individually.

## THE HOSPITAL

 The district court entered summary judgment in favor of the hospital on the civil rights claims (R. at 234) and thereafter entered summary judgment in the hospital's favor on the pendent wrongful death claim under Alabama law (R. at 484). Summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all evidence is viewed in the light most favorable to the non-moving party. *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); Federal Rules of Civil Procedure, Rule 56. The district court's order granting summary judgment is not a discretionary decision and should thus be independently reviewed by the appellate court. *Federal Deposit Insurance Corporation v. Dye,* 642 F.2d 837, 841 (5th Cir.1981). Conclusions of law rendered by means of summary judgment are subject to the same standard of appellate review as any question of law raised upon appeal. *Id.*

 In considering the civil rights claim under 42 U.S.C. Section 1983, the district court correctly noted that there are two elements essential to such a claim: 1) that the conduct complained of was committed by a person acting under color of state law; and 2) that the conduct deprived a person of rights secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1978). The district court found that although the hospital acts under color of state law, "in this case the hospital took no action." (R. at 246). The district court reasoned that Dr. Petcher was the actor who discharged Morrison and that the hospital did not set a custom, policy or practice which resulted in the deprivation of Morrison's constitutional rights. There-

fore, the district court held that under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the hospital could not be liable under the respondeat superior theory and since "nothing which the hospital did" deprived Morrison of any rights (R. at 247), the hospital was not liable.

A hospital is in a unique position. Many of its services are performed by salaried employees. Many others are performed by physicians. These physicians may or may not be independent contractors, residents, interns, etc. A list of essential functions of a hospital would have to include policies and procedures for the admission and discharge of its patients. Hospitals are not hotels. Someone must necessarily make a decision in accord with an established standard or criteria. In this instance the hospital argues that it relied solely upon Dr. Petcher, as an independent treating physician of the deceased, in discharging Morrison.

 From the facts before the district court we cannot agree that there is no issue as to any material fact and that the hospital is entitled to judgment as a matter of law. Morrison's discharge was not purely a medical judgment made by a private party according to professional standards. *See Blum v. Yaretsky,* —— U.S. ——, ——, 102 S.Ct. 2777, 2787, 73 L.Ed.2d 534, 549 (1982). Rather, the decision to discharge appears to have been based on administrative considerations (e.g. lack of facilities, inadequate supervision) for which the hospital cannot disavow responsibility. Based on these considerations, the hospital, acting in concert with Dr. Petcher, arranged for Morrison to be placed in the custody of the county police. Hospital staff telephoned the sheriff's office and participated in the discharge. While the hospital staff may have performed under the direction of Dr. Petcher, under the circumstances, such is not sufficient to exonerate the hospital *as a matter of law.*

We do not here decide that the hospital's conduct caused the deprivation of Morrison's rights, for that is the task for the trier

of fact after considering both the general relationship between Dr. Petcher and the hospital and the specific actions of the parties in the rather unique situation of the police removing a patient from the hospital. This is not a "malpractice" case as the hospital appellee contends, for it involves the practice and procedures of the hospital's treatment of "unruly" patients and an incident where hospital staff telephoned the sheriff to bodily remove a patient from the hospital resulting in the patient's death in a jail cell. It is not merely the fact of discharge but the manner of discharge which is at issue in this case. Upon an independent review of the record, we conclude that the hospital was not entitled to judgment as a matter of law on the Section 1983 claim.

After dismissal and reinstatement of the plaintiff's pendent state law claim for wrongful death, and its denial of the hospital's motion for summary judgment[4] the district court again considered the claim on the morning of trial. The court asked plaintiff's attorney if he would waive the notice requirements of Federal Rules of Civil Procedure, Rule 56, and pointed out that "as the Court saw the case several defendants would be entitled to a directed verdict." (R. at 484). The plaintiff waived the notice requirement and the district court entered summary judgment on the pendent state law claim for wrongful death, Ala.Code Section 6–5–410 (1975), in favor of the hospital. The district court reasoned that plaintiff's allegations concerning the hospital staff's review of Dr. Petcher's decision were insufficient because Alabama does not "impose a duty of care upon a nursing staff to independently review decisions made by the attending physician." (R. at 487). The district court therefore concluded that "without a duty of care which runs from the defendant hospital to the decedent there can be no liability for wrongful death." (R. at 487).

The district court's conclusion that a hospital owes its patients no duty of care is erroneous, as is a conclusion that Washington County Hospital owed no duty of care to Sylvester Morrison. The district court found as a fact that Morrison "presented himself to the Washington County Hospital in Chatom, Alabama" and was admitted to the hospital by Dr. Patterson, an associate of Dr. Petcher's. (R. at 493). Whether the hospital staff should have subsequently questioned, acquiesced or participated in the turning over of a patient to law enforcement authorities is a question of fact. We cannot agree that the hospital merely operates as a slavish handmaiden to the whims of physicians on its staff it claims it has no responsibility for. Under Alabama law, a hospital does have a duty of care to its patients. See e.g., *Lloyd Noland Foundation, Inc. v. Harris*, 295 Ala. 63, 322 So.2d 709 (Ala.1975); *Doctors Hospital of Mobile, Inc. v. Kirksey*, 290 Ala. 220, 275 So.2d 651 (1973); *Mobile Infirmary v. Eberlein*, 270 Ala. 360, 119 So.2d 8 (1960). The issue of fact in this case is whether it breached that duty. The district court's entry of summary judgment on the pendent wrongful death claim will accordingly be reversed.

## THE DOCTOR

The district court granted summary judgment in favor of Doctor Petcher on the Section 1983 claim based on the conclusion that "no state action was involved in the decision by Dr. Petcher to discharge Morrison to the police. The conduct of Dr. Petcher was wholly private." (R. at 249). Dr. Petcher was on the staff of Washington County Hospital, treating a patient in the hospital, directing hospital staff and utilizing hospital facilities. While the *decision* concerning Morrison's discharge involved Dr. Petcher's mental processes, the circumstances and fact of the discharge are at issue. Under *Parratt v. Taylor, supra,* the

---

4. The district judge had formerly denied the hospital's motion for summary judgment stating, "A genuine issue of fact is raised as to whether the nurses at the Washington County Hospital adequately discharged any duty which they may have owed Sylvester Morrison to make an independent evaluation of the wisdom to discharge Morrison from the hospital to the county jail." (R. at 281).

inquiry is not the doctor's abstract status, but whether the discharge was committed by "a person acting under color of state law," i.e., whether Dr. Petcher was acting under color of state law when he arranged for the law enforcement authorities to remove Morrison from the hospital.

■ In *Lugar v. Edmondson Oil Co.,* —— U.S. ——, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), the Supreme Court set out a two part test for determining if the deprivation of a federal right is fairly attributable to the state.

> First, the deprivation must be caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible.

*Id.,* —— U.S. at ——, 102 S.Ct. at 2754, 73 L.Ed.2d at 495. In the case at bar the alleged deprivation was caused in part by persons for whom the state is clearly responsible—the hospital staff and county police.

> Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state.

*Id.* Dr. Petcher was faced with the problem of what to do with Morrison. In solving this problem he enlisted the aid of the hospital staff and the county police and arranged for Morrison's confinement. In his treatment of Morrison, Dr. Petcher "acted together with" and "obtained significant aid from state officials." Under these circumstances the district court erred in finding as a matter of law that Dr. Petcher was not a state actor.

An independent review of the record in accordance with *Federal Deposit Insurance Corporation v. Dye, supra,* leads us to conclude that the doctor has failed to sustain his burden of showing the absence of genuine issues as to any material fact. Again, we do not intimate whether or not Doctor Petcher's conduct subjected him to liability

under Section 1983, but only that summary judgment was erroneously granted on the state of the record before the district court.

The pendent state law claim against Dr. Petcher for wrongful death was dismissed and reinstated. Dr. Petcher then filed a renewed motion for summary judgment, which the district court denied on the basis that a genuine issue of material fact remained as to whether Dr. Petcher failed to discharge the duty of care which he owed to Morrison. The case proceeded to trial on the state wrongful death claim against Dr. Petcher and the district court directed a verdict in favor of the doctor. As explained by the district court in its Order:

> By the second day of the trial, July 14, 1981, the plaintiff had called her expert witness to testify to the quality of the treatment received by the decedent from Dr. Paul Petcher. The Court ruled that the expert, Dr. David H. Knott, lacked sufficient basis upon which to express an expert opinion. Dr. Knott testified that he was unfamiliar with the quality of care rendered by a general family practitioner in the same general neighborhood in and around Chatom, Alabama. Under Alabama law this rendered Dr. Knott's testimony inadmissible. Without expert testimony from a physician the plaintiff would, as a matter of law, be unable to prove any negligence against Dr. Petcher.

(R. at 492).

Appellant Morrison contends that the district court erred in excluding the testimony of her expert, Dr. David Knott, which if true undermines the rationale for the directed verdict.

The district court excluded Dr. Knott's testimony because Dr. Knott was not familiar with the practice of medicine in Alabama in 1978 and was therefore not qualified to testify under *Zills v. Brown,* 382 So.2d 528 (Ala.1980). In *Zills,* the Alabama Supreme Court considered the various rules for the admission of testimony of medical experts and concluded that the "same general neighborhood" rule rather than the "strict locality" rule applied in Alabama.

The Alabama court noted that there had not been a proper challenge to the "same general neighborhood" rule at trial and thus such a rule could not be abolished on that appeal. However, the Alabama court opined:

> [W]e are inclined to view that Alabama's "same general neighborhood" rule does in fact encompass a national standard of care for reasonably skilled physicians acting in the same or similar circumstances, unless there is evidence that demonstrates such a national medical neighborhood standard could not, because of justifiable circumstances, be adhered to. We deem the language "same general neighborhood" to refer to the national *medical neighborhood* or *national medical community,* of reasonably competent physicians acting in the same or similar circumstances. We are of the opinion that Alabama's neighborhood rule, which was recently codified in Section 6–5–484(a), Code 1975, is an enlightened one which takes into account the realities extant in the present day national *medical world, community,* or *neighborhood;* no matter which term one chooses. The rule logically recognizes that today there is no lack of opportunity for a physician or surgeon to keep abreast of the advances made in his profession and to be familiar with the latest methods, procedures, and practices adopted.

382 So.2d at 532. (emphasis in original).

Attempting to apply *Zills,* the district court held that evidence of a national standard was not sufficient under Alabama law because "*Zills* was maybe what the law will be. someday in Alabama. Judge Bloodworth is no longer on the Supreme Court, one of the plurality. I don't know how it will come out, and I am not going to apply it to this standard in this case." (Tr. at 187). The district court's question about the viability of the *Zills* dicta was subsequently resolved by the Alabama Supreme Court in *Drs. Lane, Bryant, Eubanks & Dulaney v. Otts,* 412 So.2d 254 (Ala.1982) where Alabama's highest court agreed with its prior description of the same general neighborhood as the "*national medical*

*neighborhood* or *national medical community,* of reasonably competent physicians acting in the same or similar circumstances." *Id.* at 258, *quoting Zills, supra* at 532.

 The district court's exclusion of Dr. Knott's testimony was erroneous under Alabama law and thus the verdict directed in favor of the doctor on the basis of lack of expert testimony is reversed.

## THE COUNTY AND COMMISSIONERS

The district court granted summary judgment in favor of the Washington County Commissioners on the federal law claims because the "commissioners were not the actors who discharged Morrison to the police." (R. at 248). Shortly thereafter, the court also entered summary judgment on the federal claims in favor of Washington County, a non-moving party. (R. at 262). During the morning of trial conference, the court entered summary judgment in favor of the commissioners and the county on the wrongful death claim. (R. at 485).

 Again, an independent review of the record, *Federal Deposit Insurance v. Dye, supra,* leads us to a conclusion that the county and commissioners have failed to sustain the burden of showing the absence of genuine issues as to material facts. The trial court focused on the discharge of Morrison from the hospital. Morrison argues that the liability of the county and commissioners arises from systemic failures in the jail where Morrison died. Material issues of fact remain concerning the operation of the jail and the medical treatment for inmates, making judgment as a matter of law on the Section 1983 claim and wrongful death claim inappropriate. There was affirmative testimony showing a total lack of any training of those in charge of the jail as to the handling of medical problems that might arise. The law has long since passed the point where prisoners are incarcerated and then totally ignored. Again, we do not intimate that the county or its commissioners are legally liable, but only that judgment as a matter of law on the state of the record before the district court was improper.

## THE SHERIFF

The district court entered findings of fact and conclusions of law dismissing the claims of Morrison against Sheriff Wheat under Section 1983 and the Alabama wrongful death statute. As explained by the district court:

> After [the] ruling that Dr. Knott would be unable to express an opinion the plaintiff huddled with her attorneys and proposed for tactical reasons, several alternatives to the Court.... [T]he plaintiff agreed to submit the case against Sheriff Wheat to the Court for decision by the Court as though the case had been tried to the bench from the start rather than to a jury.

[R. at 493–493]. The district court then entered lengthy findings of fact, including:

> The Court finds that the cause of death was acute cardiac arrest. That an acute cardiac arrest is completely unpredictable and untreatable within three minutes after it has occurred. That the cause of death i.e. acute cardiac arrest, did not have any relationship to the alcohol withdrawal or delirium tremens of Sylvester Morrison. Dr. Petcher could not and did not anticipate the occurrence of acute cardiac arrest.
>
> The Court finds that there was no way Jailer Touchstone could have known of or anticipated the occurrence of the acute cardiac arrest, it could have happened anywhere at any time. The Court finds that nothing was done that should not have been done or not done that should have been done by either the defendant Sheriff William Wheat or Jailer Touchstone that in any way caused or contributed to the acute cardiac arrest which resulted in the death of Sylvester Morrison.

[R. at 498–99].

█ The district court entered its finding that there was no causal connection between the delirium tremens and the cardiac arrest without the benefit of the testimony of plaintiff's expert, Dr. Knott. As discussed above, such testimony was erroneously excluded under Alabama law. *Drs.*

*Lane, Bryant, Eubanks & Dulaney v. Otts,* 412 So.2d 254 (Ala.1982). There is a serious issue in this case concerning the relationship between the delirium tremens and the cardiac arrest and what, if anything, anyone could have done to prevent Morrison's death. Exclusion of Dr. Knott's testimony was not harmless error and requires reversal of the judgment in favor of the sheriff in order that the finder of fact may consider plaintiff's expert's testimony.

In considering the section 1983 claim against Sheriff Wheat, the district court concluded that "Sheriff Wheat was entitled to authorize the incarceration of Morrison, as he surely did when he told Officer Bickerstaff [a city policeman] 'to go ahead' and incarcerate Morrison." [R. at 50]. The district court noted that Alabama authorizes the arrest of a person if that person commits a public offense in the presence of the arresting officer. Officer Bickerstaff arrested Morrison and charged him with the offense of "public drunkenness." From the record, it appears that Morrison was neither in public, but in a hospital as a patient, nor drunk, but suffering from lack of alcohol. The record indicates a constant flow of information between Officer Bickerstaff, a city policeman, and Sheriff Wheat. In addition to the reasons set forth above relating to the exclusion of Dr. Knott's testimony, we remand this case to the district court for consideration of Sheriff Wheat's knowledge of the circumstances of the arrest and subsequent decision to incarcerate. Serious factual issues remain concerning the removal of a seriously ill patient from a hospital and his confinement in a jail with no medical facilities under the observations of untrained personnel.

## CONCLUSION

This case presents difficult and serious issues. The district court conscientiously struggled to discern various claims against multiple defendants, each attempting to abdicate responsibility for the series of tragic events culminating in the death of Sylvester Morrison. While the trier of fact may ultimately find that none of the defendants

is legally liable for Mr. Morrison's death, the trier of fact should be afforded that opportunity. Accordingly, this case is RE-VERSED and REMANDED.