446 So.2d 1018 (1983)
Nell LAMONT
v.
BROOKWOOD HEALTH SERVICES, INC., et al.
82-874.
Supreme Court of Alabama.
December 9, 1983.
Larry R. Grissett of Prestwood, Prestwood & Grissett, Andalusia, for appellant.
Larry W. Harper of Porterfield, Scholl, Bainbridge, Mims & Harper, Birmingham, for appellees.
EMBRY, Justice.
Nell Lamont appeals from the summary judgment entered in behalf of Brookwood Health Services, Inc., in her action for damages resulting from the allegedly negligent failure of Brookwood to care for her before, during and after surgery. The action remains pending against other defendants. A proper Rule 54(b), ARCP, order was entered as a part of the summary judgment.
It is Lamont's contention that her counter-affidavit, which also incorporated a transcript of her oral deposition, shows the existence of a genuine issue of material fact, the negligence vel non of Brookwood's servant, agents, or employees, and entry of summary judgment was inappropriate. We agree.
Nell Lamont was admitted to Brookwood Hospital for the purpose of having a surgical procedure performed known as a jejunoileal by-pass designed to alleviate morbid obesity. In her oral deposition, and by affidavit, she says she had attended nursing school, had been employed in hospitals, understands certain standards required of nurses and other staff personnel in a hospital, and further, the following:

*1019 "When I was prepared for surgery to be performed in the defendant hospital I was prepared for that surgery in my hospital room. The linens on my bed had not been changed before I was rolled into the surgical suite, on the hospital bed, which had been rolled from the room to the suite without any sterilization procedure whatever. I was lifted from the soiled linen of my hospital bed onto the surgical table. After the surgical procedure was completed I was transferred to the intensive care unit where no medication was to be administered to me orally; all medication was to be administered intravenously. While in the intensive care unit the liquid being given to me was interrupted by the disengagement of the IV needle from my arm. No nurse could find a vein for reentry. For nearly four hours I was deprived of the much needed liquid which contained my medication. I requested the nurses to call my doctor. They called in a technician from the lab to find a vein for reentry. He failed, left the ICU, returned later and failed again. The nurses had not even monitored my blood pressure and I was certain I was going into shock. My systolic and diastolis pressure were very close together which signified an emergency. I told the nurses again to get Dr. Lemon who would prepare a shunt. Finally Dr. Lemon arrived and did apply a shunt.
"My body needed the IV fluids and medication desperately and I was aware that my own death was near.
"The infection developed is described in my deposition and Dr. Lemon acknowledge to me that I had suffered a nosocomial infection. I believe the hospital records will reflect this fact.
"The preparation for my surgery, the services of the nurses in the intensive care unit and my care when I was returned to my room were all substandard according not only to common sense but to the basic principles of caring for a patient having had majory surgery. When my infection was discovered there was no procedure to control the infection as required by the joint commission. My own doctor did not know the identity of the infection committee and had apparently never heard of `red-bagging' which is a precaution recognized by most student nurses." (Quoted without correction of typographical or other errors.)
Brookwood's motion for summary judgment was submitted upon the pleadings and the deposition of Dr. A.G. Lemmon (Lamont's surgeon). Brookwood contends that the testimony of Dr. Lemmon indicates that no genuine issue of material fact exists and further that his opinion that Brookwood conformed to the standard of care exercised by other hospitals in the general area as required by § 6-5-484, Code 1975. To exemplify its position in that regard, Brookwood referred the trial court to the following:
"Q Doctor, did you review the hospital record and chart on Mrs. Lamont prior to this deposition?
"A Yes.
"Q Did you see anything in those charts that would indicate that the hospital or its personnel did anything wrong in the treatment of Mrs. Lamont?
"A No.
"....
"Q Are you familiar with the standard of care rendered by hospitals and in the Birmingham area?
"A Yes.
"Q Do you consider the standard of care given to Mrs. Lamont by Brookwood Hospital and its personnel, it was in keeping with the standard of care rendered to patients generally in the Birmingham area of the hospital?
"A I certainly think so. I was unaware of any breaching."
We opine that the materials upon which the motion was submitted, taken with the evidence offered by Lamont, are sufficient to demonstrate that genuine issues of material fact present in this case require reversal of the summary judgment. At the least, Lamont's evidence shows that as to basic standards of nursing and hospital *1020 care, she was sufficiently expert to make an issue of fact as to whether Brookwood departed from those standards in its care and treatment of her as its patient. E.g., see Baker v. Chastain, 389 So.2d 932 (Ala.1980). Among other things, the evidence showed she had received training both as a licensed practical nurse and as a registered nurse, and had been a private duty nurse as well as having been employed in hospitals.
The sole remaining issue of law needing to be addressed is the proper interpretation of the following sentence found in § 6-5-484(a), Code 1975:
"In the care of a hospital rendering services to a patient, the hospital must use that degree of care, skill and diligence used by hospitals generally in the community."
For the answer, we need look no further than two rather recent decisions of this court: Drs. Lane, Bryant, Eubanks and Dulaney v. Otts, 412 So.2d 254 (Ala.1982), and May v. Moore, 424 So.2d 596 (Ala. 1982). In those decisions, this court recognized that "`Same general neighborhood' refers to the national medical neighborhood or national medical community, of reasonably competent physicians acting in the same or similar circumstances." Therefore, in our view, the phrase "that degree of care, skill and diligence used by hospitals generally in the community" refers to the national hospital community. A hospital owes those present in connection with care and treatment, such as Lamont or one similarly situated, a duty to exercise that degree of care, skill, and diligence had and exercised by those hospitals engaged in the same kind of operation, in similar conditions or under similar circumstances.
The judgment below is due to be and is hereby reversed and the case remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
FAULKNER and BEATTY, JJ., concur.
TORBERT, C.J., and MADDOX, JONES, SHORES and ADAMS, JJ., concur in the result.
ALMON, J., not sitting.
TORBERT, Chief Justice (concurring in the result).
I concur only in the result because I cannot agree with that portion of the plurality's opinion that would adopt a national standard of care to apply to the operation of hospitals in Alabama. I still adhere to the views I expressed in Zills v. Brown, 382 So.2d 528, 534 (Ala.1980), and Drs. Lane, Bryant, Eubanks & Dulaney v. Otts, 412 So.2d 254, 262 (Ala.1982). The opinions of the plurality in Zills and the majority in Drs. Lane, Bryant, Eubanks & Dulaney, equate "same general neighborhood" with "national medical neighborhood." That holding is clearly contrary to the usual and customary meaning of "same general neighborhood," as well as the interpretation given that phrase by the courts of Alabama previously, by the federal courts applying Alabama law, and by the Legislature when it approved Code 1975, § 6-5-484.
The plurality in the present case would extend the questionable holding in Drs. Lane, Bryant, Eubanks & Dulaney to provide that the phrase "`that degree of care, skill and diligence used by hospitals generally in the community' refers to the national hospital community." Such a decision would again ignore a clear legislative intent and would overrule Alabama cases that have adopted and followed the locality rule. I concur in the reversal of the summary judgment, but only because the evidence offered in support of and in opposition to the summary judgment showed a genuine issue of material fact present in the case.
MADDOX, J., concurs.
JONES, Justice (concurring in the result):
I concur in the result of reversal, because this is a classical negligence case where the proffered evidence raises genuine issues of material fact, making summary *1021 judgment inappropriate. In my opinion, nothing in this case as postured calls for any discussion of the "community" standard prescribed by § 6-5-484, Code 1975.
SHORES, Justice (concurring in the result):
I concur in the result and would adhere to the view I expressed in Drs. Lane, Bryant, Eubanks and Dulaney v. Otts, 412 So.2d 254 (Ala.1982). I do not believe small hospitals in remote rural areas should be held to the same standard as well-equipped hospitals in metropolitan centers.
ADAMS, J., concurs.