**James M. DOLLAR and Etta Marie Dollar, Plaintiffs-Appellees,**

v.

**HARALSON COUNTY, GEORGIA, Defendant-Appellant.**

No. 82–8291.

United States Court of Appeals, Eleventh Circuit.

May 19, 1983.

---

**3.** This case is not precedent binding on this court. *See* note 1, *supra.*

Murphy, Witcher & Murphy, Jack F. Witcher, John W. Kilgo, Bremen, Ga., for defendant-appellant.

Marson G. Dunaway, Jr., Rockmart, Ga., for plaintiffs-appellees.

Before FAY and VANCE, Circuit Judges, and ALLGOOD *, District Judge.

VANCE, Circuit Judge:

This civil rights action, brought pursuant to 42 U.S.C. § 1983 by James and Etta Marie Dollar against Haralson County, Georgia, arose from a tragic incident which occurred on May 22, 1980. The complaint alleged that the county deprived the Dollars of their constitutional rights by negligently failing to construct a bridge over a ford in Haralson County and that such negligence proximately caused the wrongful deaths of the Dollars' two daughters. The daughters were drowned when they and their mother were attempting to cross the rain swollen ford. The jury returned a verdict of $100,-000 for Mrs. Dollar and $3,258.26 for Mr. Dollar on his derivative claim. It is from this judgment and the denial of posttrial

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

motions for jnov/new trial that the county appeals. We reverse the district court's denial of the jnov motion and remand for entry of judgment for the county.

Viewed in the light most favorable to the Dollars, the evidence at trial revealed the following facts. Macedonia Church Road is a county dirt road that crosses Kiser Creek at a ford just east of Georgia Highway 120. Under normal conditions, the stream at the ford has a depth of eight to twelve inches. There has never been a bridge or culvert or other structure or improvement at the crossing.

Jim Smith, the sole Haralson County Commissioner of Roads and Revenues, was the person responsible for the overall supervision of county roads, bridges and fords. Smith testified at trial that as of September 1978 he had established the Kiser Creek ford as the "top priority," the "most needed place in the county" for a bridge. Smith had listed the ford as the county's number one priority with the Local Assistance Bridges program administered by the state of Georgia. Commissioner Smith further testified that a 1978 county tax levy netted $250,000, that a 1979 levy acquired $350,000 and that a 1980 levy brought in $450,000. Smith stated, however, that the county policy was not to expend local tax revenues to construct new bridges: "The only time we buil[d] them is when we get a State contract to build those kind of culverts." Smith estimated that a concrete box culvert over Kiser Creek would have cost between $30,000 and $37,000. The jury found that Commissioner Smith's failure to spend local revenues to construct the bridge was negligent and that the county's negligence was the legal cause of the injury asserted in the complaint.

At the time of the accident, the Dollar family lived about one and one-half miles east of the ford, and Mrs. Dollar traversed the ford twice daily. The Dollars knew that the Kiser Creek ford, like any ford, became impassable to vehicular traffic during and immediately following periods of heavy rain. On May 22, 1980, Haralson County encountered heavy rains. In the early evening, Etta Dollar picked up her two youngest children, Cindy (age two) and Jamie (age one) from her sister's house. Mrs. Dollar took her usual route home, which brought her across the Kiser Creek ford. Mrs. Dollar testified that as she approached the ford from the west, she could not determine the water level until she reached the edge of the stream. By the time she realized the water in the stream was higher than normal, Mrs. Dollar was unable to back the car away from the water's edge because her tires spun in the mud.

Mrs. Dollar testified that as she struggled with the incapacitated vehicle, she saw a five-foot high "wall of water" rapidly coming downstream towards her from less than a hundred yards away. The water dragged the car into the stream, and Mrs. Dollar placed the two children on the roof of the vehicle. The car began to sink, however, and she and the girls were submerged as well. Mrs. Dollar, who was unable to swim, involuntarily lost her grasp on the two children. Both daughters drowned.

Haralson County raises eight issues on appeal: whether the district court properly instructed the jury that simple negligence is the standard of care for liability under section 1983; whether the trial court properly instructed the jury on the elements of section 1983; whether sufficient evidence was presented on causation; whether any negligence on the part of the county rose to the stature of a "constitutional tort"; whether Mrs. Dollar assumed the risk of injury as a matter of law; whether, as a matter of law, the deaths resulted from an act of God; whether Georgia tort law provided an adequate remedy for the alleged negligence so as to preclude recovery under section 1983; whether mistrial was mandated by allegedly improper arguments made by plaintiffs' counsel. Because we hold that the actions of the county did not result in deprivation of the Dollars' constitutional rights, we need not reach the remaining issues.

■ In order to sustain a cause of action based on 42 U.S.C. § 1983, a plaintiff must make a prima facie showing of two ele-

ments: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); *Morrison v. Washington County,* 700 F.2d 678, 682 (11th Cir.1983). Counsel for Haralson County conceded at oral argument that there was "no real question" in this case about the second element. County Commissioner Smith clearly was acting under authority of state law when he decided against building the bridge. Smith was the sole commissioner of the county and, as counsel put it, Smith "is, basically, the county governing body." The issue for us is whether the conduct complained of deprived persons of constitutional or statutory rights.

█ Section 1983 is not self-executing, in that the statute itself creates no substantive rights. *McKinnis v. Mosely,* 693 F.2d 1054, 1057–58 (11th Cir.1982). Section 1983 provides only that deprivations of "rights, privileges or immunities secured by the Constitution and the laws" give rise to private causes of action. The Dollars contend that the county violated the fourteenth amendment's protection against deprivation of life without due process of law. Although the right to life is obviously an interest of constitutional dimension, its deprivation alone cannot give rise to a claim under section 1983. In determining whether a constitutional deprivation has occurred, courts must examine whether the defendant was under any obligation to the particular plaintiff. The question of the existence of such a duty is an issue of law. The court, not the jury, must determine "whether, upon the facts in evidence, [a duty] exists between the parties that the community will impose a legal obligation upon one for the benefit of the other." W. Prosser, Handbook of the Law of Torts 206 (1971).

The duty inquiry focuses upon the *relationship* between plaintiff and defendant. Because the existence of a duty resulting from relationship is usually clear in section 1983 cases, the duty issue seldom has been addressed in our opinions. Prisons, for example, clearly owe a plethora of duties to their inmates. Such duties arise from that peculiar relationship between prisoners and the state. The Supreme Court has noted that for inmates "eating, sleeping, dressing, washing, working and playing are all done under the watchful eye of the State .... What for a private citizen would be a dispute with his landlord, with his employer, with his tailor, with his neighbor, or with his banker becomes, for the prisoner, a dispute with the State." *Preiser v. Rodriguez,* 411 U.S. 475, 492, 93 S.Ct. 1827, 1837, 36 L.Ed.2d 439 (1973). Similarly, in *Morrison v. Washington County,* 700 F.2d at 782–83, this court held that the relationship between a county hospital and its patients gave rise to a duty of reasonable care by the former, negligent breach of which could give rise to a cause of action based on section 1983. *See also Daniels v. Twin Oaks Nursing Home,* 692 F.2d 1321 (11th Cir. 1982).

█ This case stands in stark contrast to our prisoner cases and to cases such as *Morrison* and *Daniels.* The only relationship between the Dollars and Haralson County is that the Dollars were taxpayers and citizens of the county and that they traveled upon county roads. While the county may have been under a legal duty to maintain existing roads and to ensure the safety of those roads even where the roads cross fords, we decline to hold that the county had a general duty to undertake construction of a bridge over the Kiser Creek ford. *See Hull v. City of Duncanville,* 678 F.2d 582 (5th Cir.1982) (city's negligent failure to properly maintain railway crossing not actionable under section 1983); *York v. City of Cedartown,* 648 F.2d 231 (5th Cir.1981)[1] (city's negligent design and

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc) this circuit adopted as precedent all former fifth circuit cases submitted or decided prior to October 1, 1981. In *Stein v. Reynolds Sec., Inc.,* 667 F.2d 33, 34 (11th Cir.1982) the court held that Unit B panel

construction of street and drainage system not cognizable under section 1983).[2] Our conclusion in this case is informed, although not controlled, by Georgia law. *See Morrison,* 700 F.2d at 683 (section 1983 negligence action against hospital sustained because, under Alabama law, a hospital owes a duty of care to its patients). The Georgia Code states that "[w]here municipal corporations are not required by statute to perform an act, they may not be held liable for exercising their discretion in failing to perform the same." Ga.Code Ann. § 36–33–2 (1982). *See also id.* at § 36–1–4. The Georgia Supreme Court has held that this statutory provision "makes the county liable for defective bridges and does not apply to a situation where no bridge exists." *Williams v. Georgia Power Co.,* 233 Ga. 517, 212 S.E.2d 348, 351 (1975). The Dollars have cited no authority from Georgia or elsewhere that imposes upon a municipality a duty to undertake to build a bridge across a creek which under normal circumstances is safe to ford. Further, in determining "the existence of a duty, there runs through much of the law a distinction between action and inaction." Prosser, *supra* at 338. The inquiry is "whether the defendant has gone. so far in what he has actually done, and has got himself into such a relation with the plaintiff, that he has begun to affect the interests of the plaintiff adversely, as distinguished from merely failing to confer a benefit upon him." *Id.* at 340. Georgia cases draw a clear line between a discretionary nonfeasance and the negligent maintenance of something erected by the local government in its discretion. *See Tamas v. Columbus,* 244 Ga. 200, 259 S.E.2d 457 (1979). We are impressed that this is a case of omission by the county, of discretionary inaction in failing to undertake a municipal improvement.

Since the county was under no duty to build the bridge, Commissioner Smith's ad-ministrative decision not to construct it is not compensable under section 1983. Mere exercise of administrative discretion cannot, under the facts of this case, rise to the level of a constitutional violation.

In *Parratt,* the Supreme Court warned against unbridled expansion of section 1983:

> To accept respondent's argument that the conduct of the state officials in this case constituted a violation of the Fourteenth Amendment would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under "color of law" into a violation of the Fourteenth Amendment cognizable under § 1983. It is hard to perceive any logical stopping place to such a line of reasoning. Presumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983. Such reasoning "would make the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the states." We do not think that the drafters of the Fourteenth Amendment intended the Amendment to play such a role in our society.

451 U.S. at 544, 101 S.Ct. at 1917 (citations omitted). The present case is even further removed from section 1983 than the noncognizable automobile accident case that the Court in *Parratt* hypothesized. The judgment for plaintiffs must be reversed and the case remanded for entry of judgment for defendant.

REVERSED and REMANDED.

or en banc court decisions of the former fifth circuit also are binding precedent in the eleventh circuit. *Hull* thus is not precedent binding on this circuit while *York* is.

2. Our holding is not inconsistent with *Suthoff v. Yazoo County Indus. Dev. Corp.,* 637 F.2d 337 (5th Cir.1981), where the former fifth cir-cuit held that a conspiracy to misuse a municipality's expropriation powers, by the institution of condemnation proceedings in order to coerce landowners into selling their property at below value prices to entities which did not possess the power of eminent domain, was actionable under section 1983.