Kathy Jo TAYLOR, A Minor, By and Through David S. WALKER, Jr., Attorney at Law, as Guardian Ad Litem, Plaintiff-Appellant,

v.

James G. LEDBETTER, PH.D., et al., Defendants-Appellees.

No. 85–8354.

United States Court of Appeals, Eleventh Circuit.

June 17, 1986.

As Amended June 23, 1986.

Rehearing En Banc Granted and Opinion Vacated Aug. 14, 1986.

Don C. Keenan, David S. Bills, Atlanta, Ga., for plaintiff-appellant.

David C. Will, Asst. Atty. Gen., Atlanta, Ga., for defendants-appellees.

Before RONEY and HATCHETT, Circuit Judges, and NICHOLS *, Senior Circuit Judge.

RONEY, Circuit Judge:

In this action under 42 U.S.C.A. § 1983, plaintiff, a minor child born in 1980, alleges that certain injuries she received while in the custody of foster parents were caused by the negligence and deliberate indiffer-

* Honorable Philip Nichols, Jr., Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

ence of defendants, who are employees of the Georgia Department of Human Resources ("DHR"). Plaintiff alleges that defendants failed to investigate the foster home and foster parents before placing plaintiff in their custody, failed to properly supervise the home, and failed to procure or provide complete medical data concerning plaintiff. Essentially, on the basis of the careful reasoning therein set forth, we affirm the district court's orders dismissing the complaint, holding: (1) the Georgia statutory foster care scheme does not create a "legitimate claim of entitlement" enforceable in federal courts under *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); and (2) the allegations are insufficient to demonstrate "deliberate indifference" to plaintiff's rights actionable under *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) and *Doe v. New York City Department of Social Services*, 649 F.2d 134 (2d Cir.1981), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

In 1982, the minor plaintiff was taken from the custody of her natural parents and placed with the Gwinnett County Department of Family and Children's Services ("DFACS") by order of the Gwinnett County Juvenile Court. Thereafter, defendants, as officials and employees of DFACS and DHR, were responsible for plaintiff's custody, supervision, and care. Later that year, plaintiff was placed in a foster home. Plaintiff suffered severe personal injuries at the hands of her foster mother in October 1982. As a result of these injuries or of adverse reaction or overdose to unnecessary medication, plaintiff lapsed into a coma, in which she remains.

Plaintiff alleges that defendants failed to make a thorough and complete investigation of this foster home; that defendants knew or should have known that the foster parents were legally and morally unfit to be entrusted with plaintiff's custody, care, and supervision; that defendants failed to maintain proper supervision and inspection of the foster home; and that defendants failed to procure complete physical and medical data concerning plaintiff or to provide any such data to the foster parents.

■ The question in this federal case here concerns whether defendants' conduct, as alleged, deprived plaintiff of a right or privilege secured by the Constitution or federal law. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). Plaintiff contends that the Georgia statutory foster care scheme, contained in the Children and Youth Act, O.C.G.A. §§ 49–5–1 to –5–21, creates legitimate claims of entitlement to certain benefits for the plaintiff, and that defendants violated plaintiff's due process rights by failing to follow the statutory directives.

Plaintiff relies upon *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and its progeny. *Roth* did not hold, however, that all state statutes create rights enforceable in federal court. The statutory sections to which plaintiff referred state the goals and purposes of the foster care system and provide guidelines to direct state officials in the exercise of their functions. Although undoubtedly for the best interests of the children affected, none of the sections cited create specific rights or benefits in particular children. When statutes provide only that certain procedural guidelines be followed in arriving at a decision, they do not create a substantive interest protected by the Constitution. *Jean v. Nelson*, 727 F.2d 957, 981 (11th Cir.1984) (*en banc*).

In addition to the *Roth*-based claim, plaintiff asserts that her complaint stated a cause of action under the principles announced in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) and *Doe v. New York City Department of Social Services*, 649 F.2d 134 (2d Cir.1981), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

In *Estelle*, the Supreme Court held that deliberate indifference by state prison personnel to a prisoner's serious illness or injury would constitute cruel and unusual punishment contravening the Eighth Amendment and giving rise to a section 1983 action. In *Doe*, the Second Circuit

held that a child in state custody had a section 1983 cause of action based on an *Estelle*-type analysis under the Fourteenth Amendment. *Doe* drew a parallel between the situation of a child in foster care and that of a prisoner in state custody and held that state officials may be liable under section 1983 when the officials' "deliberate indifference" is a substantial factor leading to denial of a constitutionally protected liberty or property interest. 649 F.2d at 141. The court cautioned, however, that although deliberate indifference could be inferred from a failure to act, the inference should not be drawn as readily as in the prison context because the line of authority between state foster care officials and foster parents is not as close and direct as that between prison officials and their subordinates. *Id.* at 141–42.

■ Although we might be inclined to follow the Second Circuit's standard of care in connection with children in the custody of the State, it is not necessary for us to decide whether this Circuit should extend the rationale of *Estelle* outside of the Eighth Amendment context into the foster care arena, because plaintiff's allegations fail to show the "deliberate indifference" which *Doe* requires. Plaintiff claims that defendants "should have" investigated and supervised the foster home, and if defendants had properly done so this would have prevented plaintiff's injury. The deliberate indifference standard of *Doe*, however, requires at least some allegation of knowledge on the part of the defendants and failure to act based on that knowledge:

> Of course, such indifference cannot exist absent some knowledge triggering an affirmative duty to act on plaintiff's behalf, but actual knowledge of a specific harm is not the only type of knowledge that will suffice. Defendants may be held liable under § 1983 if they, or in the case of an agency, its top supervisory personnel, exhibited deliberate indifference to a known injury, a known risk, or a specific duty, and their failure to perform the duty or act to ameliorate the risk or injury was a proximate cause of

plaintiff's deprivation of rights under the Constitution.

*Doe*, 649 F.2d at 145. Although the federal pleading rules are relatively liberal and the court must construe allegations in the complaint favorably to the pleader, a plaintiff must still set forth allegations sufficient to show affirmatively that she is entitled to relief. *Fullman v. Graddick*, 739 F.2d 553, 556 (11th Cir.1984). Other than plaintiff's wholly conclusory allegations of "deliberate indifference," plaintiff has pled no facts which would satisfy the *Doe* standard and raise defendants' acts and omissions to the level of "constitutional torts" actionable under section 1983.

The foster parents who allegedly injured the plaintiff are not defendants in this suit. Plaintiff has not asserted any claim against them here, nor has she attempted to hold the State vicariously liable for the foster parents' actions. The claims here are all made in connection with the defendants' own acts and conduct which allegedly failed to prevent the actions of the foster parents.

■ Plaintiff's remaining arguments reflect a misunderstanding of the role of federal courts. Plaintiff seems to argue that the defendants deprived plaintiff of due process by removing her from the custody of her natural family and failing to consider her relatives' requests for custody. At the conclusion of the juvenile court hearing, members of plaintiff's natural family approached defendant Jo Ann Hoover and advised her that Mr. and Mrs. Dyer, plaintiff's natural aunt and her husband, desired to have custody of plaintiff and plaintiff's sister placed in them. Although the Dyers were legally and morally fit to be entrusted with custody, plaintiff alleges that Hoover failed to explore the possibility of placement with the Dyers or to report the request to her superiors, and that defendant W.K. Berry failed to explore the possibility of placing plaintiff with any member of plaintiff's natural family. This failure allegedly led to the injuries for which plaintiff seeks compensation.

Besides stretching the notion of causation to its outer limits, this argument misconceives the proper forum for plaintiff's claims. At the hearing in which custody was taken from plaintiff's natural parents, the parents and other family members had full notice and opportunity to present their arguments. They could have taken an appeal to the Georgia Court of Appeals. O.C. G.A. §§ 15–11–26, 15–11–31. Moreover, interested persons can move to change, modify, or vacate a custody order. O.C.G.A. § 15–11–42(b), (c). The record does not reflect that the plaintiff's guardian or relatives employed any of these procedures. In these circumstances, plaintiff cannot come into federal court under section 1983 and claim the state procedures violated her due process rights.

Federal courts should exercise great caution in becoming involved in the decisions of state and local officials charged with the custody and welfare of children. Plaintiff's injuries are serious, and the defendants in this case may have violated state statutes and regulations or violated common law duties owed to plaintiff. Plaintiff's appropriate redress, though, is through state law, as plaintiff's allegations are insufficient to demonstrate a constitutional violation cognizable under section 1983.

Plaintiff has suggested that defendants may be immune from suit under state law, although defendants reply that they were engaged in ministerial functions for which they are not immune. This Court has held that immunity shielding the state and its officials from liability for discretionary functions does not in itself deny procedural due process and render a plaintiff's state law remedies inadequate under *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). *Rittenhouse v. DeKalb County*, 764 F.2d 1451, 1457–59 (11th Cir.1985). Absent other allegations of inadequacy of the state remedies, plaintiff's argument is foreclosed by *Rittenhouse*.

The claims dealt with above were made in Count I of the complaint. Count II alleged an Eighth Amendment cause of action for cruel and unusual punishment. This case does not involve criminal process or criminal punishment. Count III alleged a due process claim based on the Social Security Act, 42 U.S.C.A. § 601 *et seq.*, and corresponding regulations. We affirm the denial of relief on both of these Counts on the basis of the district court's rationale.

AFFIRMED.

HATCHETT, Circuit Judge, dissenting:

The majority gives little weight to Taylor's *Roth*-type argument, disposing of it in one paragraph. The majority states that "although undoubtedly for the best interest of the children affected, none of the sections cited creates specific rights or benefits in particular children. When statutes provide only that certain procedural guidelines be followed in arriving at a decision, they do not create a substantive interest protected by the Constitution. *Jean v. Nelson*, 727 F.2d 957, 981 (11th Cir.1984) (en banc)."

I disagree for several reasons. First, the Georgia statutes in question provide more than just "procedural guidelines to be followed in arriving at a decision." The Georgia foster care and placement scheme is a comprehensive one. The Children and Youth Act provides that "legal custody embodies: '(B) the right and the duty to protect [children] ... and (C) the responsibility to provide food, clothing, shelter, education, and ordinary medical care.'" O.C. G.A. § 49–5–3(12). The regulations governing foster care services are found in O.C.R.R.G. § 290–2–12–08. Subsection 3 of that section provides that the selection of a foster home should be based upon an assessment of the child's total needs and how well a particular program meets the child's needs. Section 16 provides that supervision of children in foster homes is to be maintained "through visits made at regular intervals and as frequently as necessary for the best interest of the child."

Thus, the Georgia scheme mandates that officials follow guidelines and take affirmative actions to ensure the well being and promote the welfare of children in foster

care. To say that these children cannot state a claim based upon deprivation of liberty interest when the officials fail to follow the mandates is, in my estimation, wrong. "In a constitution for a free people, there can be no doubt that the meaning of 'liberty' must be broad indeed." *Board of Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548, 558 (1972).

A determination that Taylor can state a claim based upon a denial of a liberty interest is buttressed by a case which the district court cites: *Dollar v. Haralson County, Ga.,* 704 F.2d 1540 (11th Cir.1983). In *Dollar,* this court stated: "In determining whether a constitutional deprivation has occurred, courts must examine whether the defendant was under any obligation to the particular plaintiff. The question of the existence of such a duty is an issue of law." *Dollar,* at 1543. This court went on to note that the existence of duties resulting from relationships is usually clear in section 1983 cases (citing the relationship between prisoners and wardens and hospitals and patients).

*Dollar* is important because it suggests that the more important the relationship and its attendant duties, the more likely it is that an act or omission on the part of one party has the potential to deprive the other of a constitutionally protected right. The relationship between state officials charged with carrying out a foster child care program and the children in the program is an important one involving substantial duties and, therefore, substantial rights.

The majority also rejects Taylor's assertion that her complaint stated a cause of action under the principles announced in *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and *Doe v. New York City Dept. of Social Services,* 649 F.2d 134 (2d Cir.1981). In *Estelle,* the Supreme Court held that deliberate indifference by state prison personnel to a prisoner's serious illness or injury would constitute cruel and unusual punishment contravening the fourteenth amendment and giving rise to a section 1983 action. In *Doe,* the Second Circuit held that a child in state custody had a section 1983 cause of action based on an *Estelle*-type analysis under the fourteenth amendment. The majority states that

> although we might be inclined to follow the Second Circuit's standard of care in connection with children in the custody of the state, it is not necessary for us to decide whether this circuit should extend the rationale of *Estelle* outside of the eighth amendment context into the foster care arena, because plaintiff's allegations fail to show the 'deliberate indifference' which *Doe* requires.

*Taylor v. Ledbetter,* 791 F.2d 881, at 883 (11th Cir. June 16, 1986).

In *Doe,* however, the Second Circuit stated that deliberate indifference is closely associated to gross negligence:

> One is a type of conduct, and the other a state of mind. Nevertheless, the two are closely associated, such that gross negligent conduct creates a strong presumption of deliberate indifference. [Citation omitted.] While this presumption is at least theoretically rebuttable, the fact that there can be instances where glaring negligence may not constitute deliberate indifference does not mean that a factfinder is barred from equating negligence of a certain dimension with deliberate indifference.

*Doe,* 649 F.2d at 143.

Whether appellees' conduct amounted to gross negligence is, of course, an issue for a jury. Therefore, it was inappropriate for the district court to dismiss this case for failure to state a claim upon which relief could be granted.